# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MARCOS EDWIN MARTINEZ, II,

Defendant-Appellant.

UNPUBLISHED
March 12, 2015

No. 319629
Isabella Circuit Court
LC No. 2013-001004-FH

Before: JANSEN, P.J., and METER and BECKERING, JJ.

PER CURIAM.

Following a jury trial, defendant, Marcos Edwin Martinez II, was convicted of two counts of delivery of less than 50 grams of heroin, MCL 333.7401(2)(a)(*iv*), and two counts of conspiracy to commit delivery of less than 50 grams of heroin, MCL 333.7401(2)(a)(*iv*) and MCL 750.157a. The trial court sentenced defendant under a second or subsequent controlled substances notice, MCL 333.7413(2), to 8 to 40 years' imprisonment for each count of delivery of heroin, and 4 to 20 years' imprisonment for each charge of conspiracy. Defendant appeals as of right, and we affirm.

## I. PERTINENT FACTS

Detectives with the Bay Area Narcotics Enforcement Team (BAYANET) used a confidential informant to make controlled buys of heroin from defendant and Jasmine Monroe on April 3 and April 4, 2013. At trial, the informant testified that he contacted Monroe on those days, asking her to put him in contact with defendant for the purpose of purchasing heroin, and that on both days, Monroe arranged to meet the informant in the parking lot of Freddie's Tavern. On both occasions, Monroe, Vanessa Hart, and defendant arrived at the tavern in a black Dodge Caliber with Monroe driving. Kimberly Powell, a police officer with the Saginaw Chippewa Police and a member of the BAYANET team, testified that she was on surveillance during both controlled purchases and identified Monroe, Hart, and defendant as the passengers in the Dodge Caliber on the date of the first purchase. Powell saw Monroe on the date of the second purchase as well as an unknown male; she was unable to identify the unknown male at the second transaction because it was dark.

During both controlled purchases, the informant testified that he got into the car and gave defendant money for drugs. The informant recalled that defendant did not face him during the first transaction, and that he saw only the side of his face during the second, but he asserted that

he knew the person from whom he purchased drugs was defendant because he knew defendant's voice and was familiar with defendant. On April 4, the informant wore a shirt with a button camera that recorded the transaction.

Testing revealed that the substances recovered from the first and second controlled buys was heroin in the amount of .22 grams and .36 grams, respectively. Laboratory testing revealed a partial imprint of one of defendant's fingers on one of the six small folded pieces of lottery paper used to wrap the heroin obtained from the first controlled buy.

Michael Covarrubias, the confidential informant's control officer, testified that he received a call from the manager of a local Super 8 Motel on April 4, 2013, reporting that suspicious items had been left behind by a guest. The items included tissue paper with dot-like bloodstains, hypodermic needles, and lined paper of the type used to make "poles," or "bindles," i.e., packets of heroin for sale, and similar to that used to wrap the heroin recovered on the April 4, 2013 buy. The room had been registered to Hart, and security video from the motel showed that Hart had checked in with three other people at approximately 2:57 a.m. on the April 4, 2013. Both the confidential informant and Covarrubias identified defendant as one of the three people with Hart.

Defendant presented Monroe as his only witness at trial. Although her plea bargain required her to testify at trial for the prosecution, the prosecution declined to use her as a witness, and she testified on behalf of defendant, repeatedly insisting that defendant had nothing to do with the drug sales. She affirmed that she alone had talked with the confidential informant and set up the meetings, and that she alone had transacted the drug deals. She acknowledged that defendant was at the Super 8 Motel, but indicated that he was not with her in the car on either of the two occasions she sold drugs to the informant.

Following Monroe's testimony, the prosecution presented rebuttal testimony from Covarrubias. Covarrubias had previously interviewed Monroe, and she had told him that she was present at, but did not conduct, the drug transactions at issue. According to Covarrubias, Monroe could not recall who was present for the first transaction.

## II. JURY INSTRUCTIONS

On appeal, defendant relies on *People v Smith*, 85 Mich App 404; 271 NW2d 252 (1978), rev'd on other grounds 406 Mich 945 (1979), to argue that the trial court committed error requiring reversal when it gave a conspiracy instruction which failed to specifically identify Monroe as defendant's alleged co-conspirator. Defendant argues that the court's erroneous instruction made it possible for the jury to find him guilty of conspiracy if he conspired with anyone, not just with Monroe. However, defendant's express approval of the instructions as given constitutes a waiver that extinguishes any possible error. *People v Kowalski*, 489 Mich 488, 504; 803 NW2d 200 (2011); *People v Carter*, 462 Mich 206, 215-216; 612 NW2d 144 (2000).

Moreover, unlike in *Smith*, 85 Mich at 413-414, given the evidence and the arguments made, the jury could not have been confused with respect to the identity of defendant's co-conspirator. For this same reason, defendant's claim that his counsel provided ineffective

assistance when he failed to object to the jury instruction fails. He has not shown a reasonable probability that the outcome would have been different had counsel objected. *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

## III. SHACKLES

Defendant also argues that by requiring him to appear in court wearing leg shackles, the trial court undermined his right to be presumed innocent, and thus violated his constitutional right to due process and a fair trial. Because defendant failed to object to the shackling, we review the court's decision for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings' independent of the defendant's innocence." *Id*. at 763-764 (internal quotation marks and citations omitted).

"Freedom from shackling is an important component of a fair trial." *People v Dixon*, 217 Mich App 400, 404; 552 NW2d 663 (1996). "Consequently, the shackling of a defendant during trial is permitted only in extraordinary circumstances." *Id.* "[A] defendant may be shackled only on a finding supported by record evidence that this is necessary to prevent escape, injury to persons in the courtroom or to maintain order." *People v Payne*, 285 Mich App 181, 186; 774 NW2d 714 (2009) (internal quotation marks and citation omitted; alteration added). "But even if a trial court abuses its discretion and requires a defendant to wear restraints, the defendant must show that he suffered prejudice as a result of the restraints to be entitled to relief." *Id.* " '[A] defendant is not prejudiced if the jury was unable to see the shackles on the defendant.' " *Id.*, quoting *People v Horn*, 279 Mich App 31, 36; 755 NW2d 212 (2008).

On the first day of trial, the trial court noted on the record that defendant was wearing ankle shackles because "[t]raditionally, that's what I do. I have people who are in custody where [sic] the ankle shackles. I can't have somebody trying to flee from the court room." After announcing that it traditionally required defendants to wear ankle shackles, the trial court stated that it needed "to go on the record and see if we have any issues regarding security." In this regard, the prosecutor noted that, following his arrest, defendant threatened to kill the confidential informant. The prosecutor also stated that the informant would have to walk past the defense table in order to testify. Defense counsel did not object to the use of shackles, but noted that defendant appeared "in front of the Court twice now" and "he seemed to behave okay." Thereafter, the trial court reiterated its intention to have defendant shackled at trial, stating "I am concerned that we do have another witness who is in custody who is going to have to walk right past [defendant] and apparently, according to [the prosecutor], there were some things said after the arrest that were problematic." The trial court thereafter indicated that "we will do everything we can to make sure that the jury never sees" the shackles and noted, on the record, that the defense table was set up in such a manner as to prevent the jury from seeing the leg shackles. The court also indicated that defendant would be led into and out of the courtroom outside the presence of the jury so that the jury would not see the leg shackles.

While the trial court noted some concern about the safety of the confidential informant in justifying its shackling decision, we are concerned with the trial court's statement that it

routinely shackles defendants because "[t]raditionally, that's what I do." The use of routine shackling, without a particularized concern, is not permitted. *Deck v Missouri*, 544 US 622, 626; 125 S Ct 2007; 161 L Ed 2d 953 (2005); *Payne*, 285 Mich App at 186. Here, although the trial court subsequently cited security concerns, it appears from the transcripts that the trial court made up its mind to shackle defendant regardless of any security concerns that may or may not have existed. Nevertheless, even assuming error in this instance, defendant is not entitled to relief. The record reveals that the trial court took precautions to make sure that the jury did not see defendant's shackles. There is no evidence to suggest that any member of the jury noticed defendant's leg restraints.[1] In the absence of any evidence that a juror saw the shackles, defendant cannot maintain that wearing shackles prejudiced him in any way. *Payne*, 285 Mich App at 186-187. Likewise, the lack of evidence of prejudice renders meritless defendant's claim of ineffective assistance of counsel predicated on counsel's handling of the matter. *Carbin*, 463 Mich at 600.

## IV. OPINION TESTIMONY

Defendant also claims that the prosecutor invaded the province of the jury when he elicited testimony from the confidential informant and Covarrubias identifying defendant as one of the people seen on a surveillance video taken from the Super 8 Motel. Because no timely objection was raised at trial, we again review for plain error affecting substantial rights. *Carines*, 460 Mich at 763-764.

Neither the confidential informant nor Covarrubias claimed to be testifying as an expert when identifying defendant on the security tape and still shots made from that tape, so MRE 701 governs the admissibility of their identification testimony. MRE 701 permits the admission of opinion testimony from lay witnesses if the opinion is "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."

Because neither the confidential informant nor Covarrubias was present at the scene, their opinion that the person pictured on the surveillance video was defendant was not rationally based on their perceptions and invaded the province of the jury. See *People v Fomby*, 300 Mich App 46, 52-53; 831 NW2d 887 (2013). Nevertheless, defendant is not entitled to relief because the record as a whole does not suggest that admission of the identification testimony "resulted in the conviction of an actually innocent defendant" or "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Carines*, 460 Mich at 763-764 (internal quotation marks and citations omitted). It was never disputed that

---

[1] Defendant filed a motion with this Court to remand the matter so the trial court could determine whether any jurors saw defendant's shackles. We denied the motion, explaining that MCR 7.211(C)(1)(a) contemplates "that an appellant's counsel will undertake some preliminary investigation regarding a matter as to which the appellant seeks a remand to develop a further factual record. Here, there is no indication of such a preliminary investigation by appellate defense counsel as to whether any juror say defendant in shackles." *People v Martinez*, unpublished order of the Court of Appeals, entered June 11, 2014 (Docket No. 319629).

defendant was at the motel. In fact, defendant's counsel said during his opening statement that defendant was at the motel. Monroe, who testified on defendant's behalf, testified that defendant was at the motel. And, defendant was not charged for any activity occurring at the Super 8 Motel.

More significantly, the evidence from the controlled buys established defendant's guilt for delivery and conspiracy to deliver. The confidential informant and Powell testified to defendant's presence at both buys, and a partial fingerprint identified as defendant's was discovered on one of the packets of heroin purchased by the informant in the first buy. In light of this evidence, admission of the identification testimony was harmless error. In addition, defendant's attendant claim of ineffective assistance of counsel fails because he cannot show that had counsel objected to the identification testimony, there is a reasonable probability that the outcome of the trial would have been different. *Carbin*, 463 Mich at 600.

## V. DEFENDANT'S STANDARD 4 BRIEF

In a Standard 4 brief, defendant claims that his counsel provided ineffective assistance when he failed to interview, investigate, and call certain witnesses on his behalf. He also claims prosecutorial misconduct for statements the prosecutor made in closing argument. Lastly, defendant challenges the sufficiency of the evidence presented against him.

## A. INEFFECTIVE ASSISTANCE

Defendant insists that if his attorney had called three indentified persons as witnesses, they would have corroborated Monroe's testimony that defendant was not with her at the time of the April 4, 2013 drug transaction. Because this issue is unpreserved, our review is limited to errors apparent on the record. *People v Johnson*, 293 Mich App 79, 90; 808 NW2d 815 (2011).

The witnesses defendant identifies were listed on plaintiff's witness list. However, defendant fails to indicate what two of the witnesses' testimony would have been. "In general, the failure to call a witness can constitute ineffective assistance of counsel only where it deprives the defendant of a substantial defense." *Payne*, 285 Mich App 190 (internal quotation marks and citation omitted). Without knowing what these two witnesses would have testified to, defendant cannot establish that he was denied a substantial defense. See *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999) (explaining that a defendant bears the burden of establishing the "factual predicate for his claim of ineffective assistance of counsel[.]").

With respect to the third witness, defendant has provided an affidavit, purportedly from the witness, allegedly attesting to defendant's whereabouts at the time of the second controlled buy. That affidavit is not part of the record on appeal; thus, we need not consider it and defendant's ineffective assistance of counsel claim must fail. See *Hoag*, 460 Mich at 6; *Johnson*, 293 Mich App at 90. Even if we were to consider it, we would conclude that defendant has

failed to establish a reasonable probability of a different outcome had his trial counsel called the witness.[2] *Carbin*, 463 Mich at 600.

## B. PROSECUTORIAL MISCONDUCT

"The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial." *People v Green*, 228 Mich App 684, 693; 580 NW2d 444 (1998). Prosecutorial comments must be read as a whole and evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial. *People v Brown*, 279 Mich App 116, 135; 755 NW2d 664 (2008). The comments to which defendant objects on appeal clearly were based on evidence presented at trial, including those focused on the credibility of Monroe. Prosecutors may "argue from the facts that a witness is credible or that the defendant or another witness is not worthy of belief." *People v Howard*, 226 Mich App 528, 548; 575 NW2d 16 (1997). No misconduct is shown.

## C. SUFFICIENCY OF THE EVIDENCE

Lastly, defendant challenges the sufficiency of the evidence for each of his four convictions. We review challenges to the sufficiency of the evidence de novo. *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010). In reviewing sufficiency of the evidence, this Court views the evidence in a light most favorable to the prosecution to determine whether the evidence was sufficient to enable a rational jury to find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Harverson*, 291 Mich App 171, 175; 804 NW2d 757 (2010). All conflicts in the evidence must be resolved in favor of the prosecution. *People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). Circumstantial evidence and all reasonable inferences drawn therefrom constitute satisfactory proof of the crime. *Carines*, 460 Mich at 757.

Defendant was convicted of delivering less than 50 grams of heroin. MCL 333.7401 provides, in relevant part:

(1) . . . a person shall not manufacture, create, deliver, or possess with intent to manufacture, create, or deliver a controlled substance . . .

(2) A person who violates this section as to:

---

[2] The affidavit states:

This is my sworn statement, On April 4, 2013 about 12:30 pm Mr. Martinez and I "John Riggins" got pick up from the Super 8 motel, We went to Dominick, Amy house. We stay until the next day.

The affidavit does not appear to be properly notarized, and it does not address defendant's whereabouts on April 3 at the time of the first controlled buy.

(a) A controlled substance classified in schedule 1[3] or 2 that is a narcotic drug or a drug described in section 7214(a)(*iv*):

\* \* \*

(*iv*) Which is in an amount less than 50 grams, of any mixture containing that substance is guilty of a felony punishable by imprisonment for not more than 20 years or a fine of not more than $25,000.00, or both.

The elements of delivering less than 50 grams of heroin are: (1) delivery; (2) of less than 50 grams; (3) of heroin or a mixture containing heroin; and (4) with knowledge that the defendant was delivering heroin. See *People v Collins*, 298 Mich App 458, 462; 828 NW2d 392 (2012). "'Deliver' or 'delivery' means the actual, constructive, or attempted transfer from 1 person to another of a controlled substance, whether or not there is an agency relationship." MCL 333.7105(1).

There was sufficient evidence for a rational jury to find, beyond a reasonable doubt, that the prosecution established each element of defendant's delivery offenses. The confidential informant testified that, after contacting Monroe about purchasing heroin, Monroe set up a meeting with defendant for defendant to sell heroin to the informant. The informant testified that defendant was present at each transaction. The informant gave defendant money in exchange for substances, and subsequent laboratory testing revealed that the substances were, in fact, heroin in amounts less than 50 grams. And, with regard to the first transaction, laboratory testing revealed a partial fingerprint identified as defendant's on the paper containing the heroin. Although defendant contests the credibility of the informant and argues that the jury should have believed Monroe's testimony, this Court will not interfere with the jury's credibility determinations, *Wolfe*, 440 Mich at 514-515, and we must "draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowak*, 462 Mich 392, 400; 614 NW2d 78 (2000).

Turning to defendant's conspiracy convictions, the prosecution was required to establish, beyond a reasonable doubt, "both the intent to combine with others and the intent to accomplish the illegal objective"—in this case, to deliver heroin in an amount sufficient to satisfy the amount proscribed by statute—less than 50 grams. See *People v Mass*, 464 Mich 615, 629, 639; 628 NW2d 540 (2001). Direct proof of an agreement is not required; rather, proof of a conspiracy may be derived from the "circumstances, acts, and conduct of the parties." *People v Justice (After Remand)*, 454 Mich 334, 347; 562 NW2d 652 (1997).

Viewing the evidence in a light most favorable to the prosecution, there was sufficient evidence for a rational jury to find, beyond a reasonable doubt, that defendant conspired with Monroe to commit the controlled substance offenses. Again, the informant testified that he contacted Monroe and asked her to put him in contact with defendant for the purpose of purchasing heroin. Monroe drove defendant to both controlled purchases, where defendant sold

---

[3] Heroin is a schedule 1 controlled substance. MCL 333.7212(1)(b).

heroin to the informant. This shows an agreement between defendant and Monroe to combine to sell the heroin. While defendant again doubts the informant's credibility and argues that the jury should have believed Monroe instead of the informant, we are required to review the evidence in a light most favorable to the prosecution, not defendant, and we will not interfere with the jury's credibility determinations. *Wolfe*, 440 Mich 514-515; *Harverson*, 291 Mich App at 175.

Affirmed.


/s/ Kathleen Jansen
/s/ Patrick M. Meter
/s/ Jane M. Beckering