PEOPLE v JOHNSON

Docket No. 295664. Submitted February 3, 2011, at Detroit. Decided
     June 14, 2011, at 9:00 a.m. Leave to appeal denied, 490 Mich 993.
  A Wayne Circuit Court jury convicted Angelo Johnson of possession
     with intent to deliver less than five kilograms of marijuana and
     possession of a firearm during the commission of a felony. Before
     he committed those offenses, defendant had been charged with a
     misdemeanor for which he had been granted bond, but that bond
     had been forfeited. The court, Daniel P. Ryan, J., sentenced
     defendant to a term of five months to four years' imprisonment for
     the marijuana-possession conviction and to a consecutive two-year
     term for the felony-firearm conviction. Defendant appealed.
     The Court of Appeals held:
     1. The elements of felony-firearm are that the defendant
  possessed a firearm during the commission of, or the attempt to
  commit, a felony. Sufficient evidence was presented for a rational
  jury to have concluded that defendant had constructive possession
  of two rifles during the commission of a felony in light of the
  evidence that the police seized the rifles from the home where
  defendant had admittedly been selling marijuana for a month and
  that the rifles had been in defendant's vicinity in that home while
  he was seated behind a table that contained marijuana.
     2. Prior record variable (PRV) 6, MCL 777.56, considers an
  offender's relationship to the criminal justice system. A trial court
  should assess five points for PRV 6 when the offender is on bond
  awaiting adjudication or sentencing for a misdemeanor, but should
  assess zero points when the offender has no relationship to the
  criminal justice system. Because defendant's bond had been forfeited,
  he was not "on bond" when he committed the sentencing offense, but
  he still had a relationship with the criminal justice system because of
  the pending misdemeanor charge. Accordingly, the trial court did not
  err by assessing five points instead of zero for PRV 6.
     3. To establish a claim of ineffective assistance of counsel, a
  defendant must show that counsel made errors so serious that he or
  she was not performing as the counsel guaranteed by the Sixth
  Amendment. There is a presumption that defense counsel was
  effective, and a defendant must overcome the strong presumption

that counsel's performance was sound trial strategy. Defendant failed to meet that burden. Defendant's counsel was not ineffective because he failed to object to the scoring of PRV 6. The decision not to object to the scoring may have been trial strategy aimed at avoiding the possibility of the assessment of even more points for PRV 6.

Affirmed.

WILDER, J., concurred, agreeing with the majority's reasoning and result with respect to defendant's claims regarding sufficiency of the evidence and ineffective assistance of counsel, but disagreeing with the majority's conclusion that defendant was not "on bond" for purposes of scoring PRV 6 when he committed the sentencing offense. He would have held that the phrase "on bond" meant "subject to an obligation" and that because defendant's obligation to appear on the misdemeanor charge had not been discharged at the time of the sentencing offense, he was on bond for purposes of scoring PRV 6.

SENTENCES — SENTENCING GUIDELINES — PRIOR RECORD VARIABLE 6 — RELATIONSHIP TO THE CRIMINAL JUSTICE SYSTEM — BOND REVOCATION.

Under prior record variable 6, a trial court should assess five points if the offender was on probation or delayed sentence status or on bond awaiting adjudication or sentencing for a misdemeanor when he or she committed the sentencing offense; a trial court should assess zero points if the offender had no relationship with the criminal justice system; an offender who forfeited his or her bond on a charge that remained pending when he or she committed the sentencing offense still had a relationship with the criminal justice system and could properly be assessed points under prior record variable 6 (MCL 777.56).

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *Kym L. Worthy*, Prosecuting Attorney, *Timothy A. Baughman*, Chief of Research, Training, and Appeals, and *Valerie M. Steer*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Christopher M. Smith*) for defendant.

Before: WHITBECK, P.J., and O'CONNELL and WILDER, JJ.

PER CURIAM. A jury convicted Angelo Johnson of possession with intent to deliver less than five kilograms of marijuana[1] and possessing a firearm during the commission of a felony (felony-firearm).[2] The trial court sentenced him to a prison term of five months to four years for the possession-of-marijuana conviction and a consecutive two-year prison term for the felony-firearm conviction. He appeals as of right. We affirm.

### I. FACTS

Johnson's convictions arise from a police raid at a house in Detroit. On April 8, 2008, the police executed a search warrant at 9577 Winthrop. When the police officers entered through the front door, they observed Johnson sitting on a couch in the front room. There was suspected marijuana on the table in front of him. The parties stipulated that Officer Booker Tooles confiscated, from the table in front of Johnson, one small plastic bag containing 5 vials of marijuana and 21 ziplock bags of marijuana totaling 55.9 grams. The officer in charge, Sergeant Marcellus Ball, confiscated $256, which he thought was on the "dining room table next to the marijuana . . . ."

Officer Wade Rayford confiscated two rifles (a Mossberg .22 caliber bolt-action rifle and a Marlin .35 caliber lever-action rifle) from the "front room of that location," which is the first room when a person enters the house. He could not remember if the room was actually the dining room or the living room, explaining, "I don't know if it was a dining room that had the appearance of a living room or vice versa." Officer Rayford clarified that he was "not saying that [Johnson] was sitting next

---

[1] MCL 333.7401(1) and (2)(d)(*iii*).

[2] MCL 750.227b.

to the guns . . . ." He believed that the weapons were recovered from "[approximately the] northwest corner of that room." Officer Brian Johnson, the first officer to enter, did not see Angelo Johnson in physical possession of a rifle, nor did Sergeant Ball personally see Angelo Johnson in possession of the rifles.

No latent prints of comparison value were developed from the rifles. Johnson gave a statement in which he admitted having one ounce of marijuana in his possession and that he had been selling marijuana from 9577 Winthrop for one month. He stated that he was not going to answer any questions about "the weapon."

The jury convicted Johnson, as stated earlier in this opinion. Johnson now appeals.

## II. SUFFICIENCY OF THE EVIDENCE

### A. STANDARD OF REVIEW

Johnson first argues that the evidence was insufficient to support his felony-firearm conviction because the evidence failed to show that he had actual or constructive possession of the firearms. When reviewing the sufficiency of the evidence in a criminal case, this Court must view the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt.[3]

### B. LEGAL STANDARDS

"The elements of felony-firearm are that the defendant possessed a firearm during the commission of, or

---

[3] *People v Johnson*, 460 Mich 720, 723; 597 NW2d 73 (1999).

the attempt to commit, a felony."[4] One must carry or possess the firearm when committing or attempting to commit a felony.[5] Possession of a firearm can be actual or constructive, joint or exclusive.[6] "[A] person has constructive possession if there is proximity to the article together with indicia of control. Put another way, a defendant has constructive possession of a firearm if the location of the weapon is known and it is reasonably accessible to the defendant."[7] Possession can be proved by circumstantial or direct evidence and is a factual question for the trier of fact.[8]

### C. APPLYING THE LEGAL STANDARDS

The evidence indicated that the police seized the rifles from the corner of the front room of the house, in the vicinity of where Johnson was seated behind the table that contained marijuana. Johnson admitted that he had been selling marijuana from the house for a month. He contends that there was no evidence that the weapons were in plain sight and no proof that they were his. However, the sizes of the rifles and the testimony describing their location in the corner of the front room, coupled with the fact that Johnson had admittedly been selling drugs from the house for a month, were sufficient to enable the jury to rationally find that he was aware of the rifles and that they were reasonably accessible to him. Thus, there was sufficient evidence that Johnson constructively possessed the rifles to support his felony-firearm conviction.

---

[4] *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999).

[5] *People v Burgenmeyer*, 461 Mich 431, 436-437; 606 NW2d 645 (2000).

[6] *People v Hill*, 433 Mich 464, 470; 446 NW2d 140 (1989).

[7] *Id.* at 470-471 (citation omitted).

[8] *Id.* at 469.

III. SCORING OF PRV 6

A. STANDARD OF REVIEW

Johnson argues that resentencing is required be-
cause the trial court erroneously assessed five points for
prior record variable (PRV) 6 of the sentencing guide-
lines. "This Court reviews a trial court's scoring deci-
sion under the sentencing guidelines to determine
whether the trial court properly exercised its discretion
and whether the record evidence adequately supports a
particular score."[9] "A trial court's scoring decision for
which there is any evidence in support will be upheld."[10]
To the extent that a scoring challenge involves a ques-
tion of statutory interpretation, this Court reviews the
issue de novo.[11]

B. LEGAL STANDARDS

PRV 6 considers an offender's relationship to the
criminal justice system.[12] A trial court should assess five
points when "[t]he offender is on probation or delayed
sentence status or *on bond* awaiting adjudication or
sentencing for a misdemeanor[.]"[13]

C. APPLYING THE LEGAL STANDARDS

Johnson acknowledges that before committing the
sentencing offense in April 2008, he had been charged
with a misdemeanor for which he had been granted
bond. However, it is undisputed that he forfeited his

---

[9] *People v Steele*, 283 Mich App 472, 490; 769 NW2d 256 (2009)
(quotation marks and citation omitted).

[10] *Id.* (quotation marks and citation omitted).

[11] *People v Osantowski*, 481 Mich 103, 107; 748 NW2d 799 (2008).

[12] MCL 777.56.

[13] MCL 777.56(1)(d) (emphasis added).

bond in July 2007, before he committed the sentencing offense. Therefore, Johnson argues that he was not "on bond" when he committed the sentencing offense and that the trial court should not have assessed five points for PRV 6.[14]

Under PRV 6, the trial court assesses points on the basis of the defendant's relationship to the criminal justice system when he or she committed the sentencing offense:[15]

> Prior record variable 6 is relationship to the criminal justice system. Score prior record variable 6 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:
>
> * * *
>
> (d) The offender is on probation or delayed sentence status or on bond awaiting adjudication or sentencing for a misdemeanor ........................................................ 5 points
>
> (e) The offender has no relationship to the criminal justice system ...................................................... 0 points[16]

The principles of statutory interpretation apply to the interpretation of the sentencing guidelines to determine if the term "on bond" includes those defendants whose bonds have been revoked.

> [T]he primary goal of statutory construction is to give effect to the Legislature's intent. To ascertain that intent,

---

[14] The record indicates that Johnson was arrested for another misdemeanor offense in December 2006, but he apparently was not arraigned on that offense until April 2009, after the sentencing offense was committed. The prosecution does not contend that the scoring of PRV 6 may be upheld on the basis of Johnson's status with respect to that offense.

[15] *People v Young*, 276 Mich App 446, 454; 740 NW2d 347 (2007).

[16] MCL 777.56(1).

this Court begins with the statute's language. When that
language is unambiguous, no further judicial construction
is required or permitted, because the Legislature is pre-
sumed to have intended the meaning it plainly ex-
pressed.[17]

In interpreting the language of PRV 6, this Court has
previously affirmed a trial court's assessment of five
points for an individual who did not fit squarely within
the language of the statute. In *People v Endres*, the
offender's circumstances did not fit the criteria in the
statute, but this Court determined that there was no
plain error in assessing five points for PRV 6, explain-
ing:

> [D]efendant correctly argues that he was not on proba-
> tion at the time that the present offenses were committed.
> The record indicates that his probation for a 1999 retail
> fraud juvenile adjudication was completed before the of-
> fense dates of June 1, 2001, to July 27, 2001. However, the
> record also indicates that on May 12, 2001, defendant was
> charged with purchasing, consuming, or possessing alcohol
> as a minor, to which he pleaded guilty on June 18, 2001,
> and was sentenced to pay $85 in fines, costs, and fees.
> Therefore, defendant had a relationship with the criminal
> justice system at the time he committed the offenses in the
> present case, and no plain error is apparent in the trial
> court's assessment of five points for PRV 6.[18]

In essence, this Court determined that there was
sufficient evidence to show that the defendant had a
relationship with the criminal justice system. This
Court determined that the evidence was sufficient de-
spite its not falling precisely within the statutory crite-
ria.

---

[17] *Osantowski*, 481 Mich at 107 (quotation marks and citations omit-
ted) (alteration in *Osantowski*).

[18] *People v Endres*, 269 Mich App 414, 422-423; 711 NW2d 398 (2006).

In addition, this Court considered PRV 6 under the former judicial sentencing guidelines in a case involving an offender whose bond was revoked before he committed the sentencing offense. Under the former judicial sentencing guidelines, a court had to assess 15 points for PRV 6 if a "[p]ost-conviction relationship exists or the offender committed the instant offense within six months of termination of probation or parole[.]"[19] The court had to assess five points when "[an]other relationship exist[ed]," and the court had to assess zero points when "[n]o relationship exist[ed]."[20] The instructions stated that a "post-conviction relationship" existed if, "at the time of the instant offense," the offender was incarcerated, on parole or probation, awaiting sentence (including on a probation violation), or on delayed sentence status.[21] The instructions further stated that "[an]other relationship exist[ed] if, at the time of the instant offense," the offender was "on bond and/or bail[.]"[22] In *People v Lyons*, before committing the sentencing offense, the defendant was arrested and posted bond. When he did not show up at the hearing, his bond was revoked.[23] This Court concluded that five points were properly assessed for PRV 6. This Court held that a revoked bond did not fit a label of "no relationship" with the criminal justice system:

> Under these circumstances, at the time of this offense, defendant had a prior relationship with the criminal justice system. In addition, the guidelines do not state that five points can be assessed *only* in the enumerated circum-

[19] Michigan Sentencing Guidelines (2d ed), p 97.

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] *People v Lyons (After Remand)*, 222 Mich App 319, 322; 564 NW2d 114 (1997).

stances. The sentencing guidelines are interpreted in accordance with the rules of statutory construction. The primary rule of statutory construction is to ascertain the intent of the drafters. Statutes must be construed to prevent absurd or illogical results and to give effect to their purposes. It would be absurd to suggest that the drafters of the guidelines intended that a defendant would receive more lenient treatment by being, in the words of the trial court, a "runaway" from the criminal justice system. The trial court did not err in assessing defendant five points for PRV 6.[24]

*Endres* suggests that a five-point score for PRV 6 is not improper when the defendant committed the sentencing offense while awaiting adjudication or sentencing for a misdemeanor, regardless of his or her bond status. The case illustrates this Court's refusal to categorize a defendant as having no relationship with the criminal justice system when it is obvious that such a relationship exists.

Moreover, although merely persuasive, *Lyons* is also useful to our current analysis because it illustrates that this Court has held that a defendant had a relationship with the criminal justice system despite not being "on bond."

In this case, in spite of his not being technically on bond, the trial court chose to assess five points for PRV 6 rather than classify Johnson as having no relationship to the criminal justice system. Johnson clearly had a relationship with the criminal justice system, and the trial court did not see it fit to categorize him otherwise.

Admittedly, when an offender commits an offense after his or her bond has been forfeited or revoked, the offender is not "on bond," as PRV 6 states. However, when an offender's bond is revoked, he or she is also not

---

[24] *Id.* at 322-323 (citations omitted).

free and clear of the criminal justice system. A condition of any pretrial release (bond) is that the defendant will appear in court as required.[25] We note that even if a defendant's bond is forfeited, the condition that the defendant appear in court is still in place and is an inherent condition of any pretrial release. Forfeiting the monetary part of a bond does not relieve the defendant of the obligation to comply with the condition that he or she appear as required by the court.

A court does not have discretion when scoring PRV 6.[26] As such, the trial court had to decide whether to score PRV 6 at five points, in spite of Johnson's revoked bond, or to score the variable at zero points. Zero points are assessed when a defendant has *no* relationship to the criminal justice system.[27] This clearly is not the case with Johnson. He was granted bond, which was subsequently revoked for his failure to pay. The ramifications of the underlying misdemeanor do not dissipate simply because his bond was revoked. If anything, the urgency of the matter was compounded when a warrant was issued thereafter. To say that Johnson had no relationship to the criminal justice system would be to ignore the reality of his previous conduct. The continued existence of the prior misdemeanor charge created a relationship with the criminal justice system that survived the revoked bond.

In summary, we find no error in the lower court's scoring PRV 6 at five points. Johnson was charged with a misdemeanor for which he was granted bond. That bond was subsequently revoked, but the ramifications of the charge remained. When Johnson committed the

---

[25] See MCR 6.106(C) and MCR 6.106(D).

[26] MCL 777.56(1) does not use discretionary language. It states to "score" PRV 6 by "assigning" a number of points.

[27] MCL 777.56(1)(e).

sentencing offense, the misdemeanor charge was still pending. As such, this Court cannot classify Johnson as having had "no relationship" with the criminal justice system. Accordingly, the trial court did not misscore PRV 6 at five points.

### IV. INEFFECTIVE ASSISTANCE OF COUNSEL

#### A. STANDARD OF REVIEW

Johnson argues that defense counsel's failure to object to the scoring of the guidelines constituted ineffective assistance of counsel. "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law."[28] "A judge must first find the facts, and then must decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel."[29] This Court reviews for clear error a trial court's factual findings, while we review de novo constitutional determinations.[30] This Court reviews unpreserved claims of ineffective assistance of counsel for errors apparent on the record.[31]

#### B. LEGAL STANDARDS

There is a presumption that defense counsel was effective, and a defendant must overcome the strong presumption that counsel's performance was sound trial strategy.[32] To establish ineffective assistance of counsel, "the defendant must show that counsel's per-

---

[28] *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002).

[29] *Id.*

[30] *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004).

[31] *Id.*

[32] *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

formance was deficient. This requires showing that counsel made errors so serious that counsel was not performing as the 'counsel' guaranteed the defendant by the Sixth Amendment."[33]

### C. APPLYING THE LEGAL STANDARDS

As stated, the trial court assessed five points for PRV 6. Again, a trial court is to assess five points for "[an] offender [who] is . . . on bond awaiting adjudication or sentencing for a misdemeanor[.]"[34] Because Johnson's bond had been revoked, he argues that he was no longer "on bond" at the time the sentencing offense was committed and thus should have had zero points assessed. Therefore, he contends that defense counsel was ineffective for failing to object to the PRV 6 scoring.

Defense counsel's decision to not object to the scoring may have been trial strategy. A trial court may assess 15 points under PRV 6 if "[t]he offender is incarcerated in jail awaiting adjudication or sentencing on a conviction or probation violation[.]"[35] When Johnson's bond was revoked, a warrant was issued for his arrest. It can be argued that he should have been in jail when he committed the sentencing offense and therefore should have had 15 points assessed, rather than five points. Johnson's total PRV score was 25 points, which placed him at PRV level D (25-49 points) on the sentencing grid. If the trial court had assessed zero points for PRV 6, he would have shifted to PRV level C (10-24 points). If the trial court had assessed 15 points, he would have remained at PRV level D. The PRV level C recommended

---

[33] *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

[34] MCL 777.56(1)(d).

[35] MCL 777.56(1)(b).

minimum sentence range for someone like Johnson, who commits a crime in offense class F and is at offense variable level II is between zero and 17 months, while the minimum sentence range with PRV level D is 5 to 23 months.[36] But a higher point total within the point range for PRV level D might have resulted in a longer minimum sentence within the minimum sentence range specified for PRV level D.

Defense counsel may have thought that aiming for a shorter minimum sentence within the range for PRV level D constituted a better strategy than challenging the score in hopes of falling within the range for PRV level C but with a risk of a higher sentence under PRV level D if that challenge failed. Put differently, if defense counsel objected and was awarded a review of the scoring, there is a chance that Johnson might have wound up in PRV level C, but there is also a chance that his score would have risen to a higher number under PRV level D. There is a strong presumption that defense counsel's actions represented sound trial strategy, and because there is a basis for defense counsel's not objecting to the PRV 6 score, Johnson cannot overcome that presumption. Furthermore, because sentence ranges for PRV level C and level D partially overlap, it is possible that sentencing could have been the same regardless of whether he was within PRV level C or level D. Johnson cannot prove that, but for counsel's errors, the proceedings would have turned out differently. Because Johnson has not met his burden, his claim of ineffective assistance of counsel fails.

We affirm.

WHITBECK, P.J., and O'CONNELL, J., concurred.

---

[36] MCL 777.67.

WILDER, J. (*concurring*). I concur in the majority's reasoning and result with respect to defendant's claims regarding sufficiency of the evidence and ineffective assistance of counsel. However, I respectfully disagree with the majority's conclusion that defendant was not "on bond" for purposes of MCL 777.56(1)(d) when he committed the sentencing offense.

The primary goal of statutory interpretation is " 'to discern and give effect to the Legislature's intent.' " *People v Williams*, 475 Mich 245, 250; 716 NW2d 208 (2006), quoting *People v Morey*, 461 Mich 325, 330; 603 NW2d 250 (1999). " 'We begin by examining the plain language of the statute; where that language is unambiguous, we presume that the Legislature intended the meaning clearly expressed—no further judicial construction is required or permitted, and the statute must be enforced as written.' " *Williams*, 475 Mich at 250, quoting *Morey*, 461 Mich at 330. If a statute is ambiguous, judicial construction is appropriate. *People v Gardner*, 482 Mich 41, 50; 753 NW2d 78 (2008).

MCL 777.56(1) provides, in relevant part:

> Prior record variable 6 is relationship to the criminal justice system. Score prior record variable 6 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:
>
> * * *
>
> (d) The offender is on probation or delayed sentence status or on bond awaiting adjudication or sentencing for a misdemeanor ........................................................... 5 points

"On" is defined as "so as to be or remain supported by or suspended from" and "subject to." *Random House Webster's College Dictionary* (2001). "Bond" is defined as "[a]n obligation; a promise." Black's Law Dictionary

(9th ed). Therefore, the phrase "on bond" in MCL
777.56(1)(d) can be interpreted to mean "subject to an
obligation."

The State Court Administrative Office's Manual for
District Court Magistrates provides, "The posting of the
bail requires the creation of a contract between the
defendant, the bail poster (a third party or a surety),
and the court. This contract is known as a **bond**."
SCAO, Manual for District Court Magistrates (2011),
§ 4.1(A), p 1. The manual further provides, "There are
three types of bail for which a bond is required: [1] cash
bail (which includes the posting of 10 percent), [2]
secured bail, or [3] unsecured bail (personal recogni-
zance)." *Id*. While bail is the security required by the
court for release, bond is the obligation or contract
between the defendant, the bail poster, and the court.

A pretrial release on an unsecured bail is subject to
the following conditions: "that the defendant *will ap-
pear as required*, will not leave the state without
permission of the court, and will not commit any crime
while released . . . ."[1] See MCR 6.106(C) and MCR
6.106(D)(1) (emphasis added). MCR 6.106(E) provides,
in relevant part, "If the court determines for reasons it
states on the record that the defendant's appearance or
the protection of the public cannot otherwise be as-
sured, money bail, with or without conditions described
in subrule (D), may be required." Even if the trial court
opts to only require money bail under subrule (E), and
not other conditions described in subrule (D), appear-
ance remains a condition of the release in light of the
language "defendant's appearance . . . cannot other-
wise be assured." With each type of bail, therefore, the
defendant is subject to the minimum obligation to

---

[1] The court may impose additional conditions.

appear as required, which I conclude is the defendant's bond, obligation, or contract with the court.

MCR 6.106(I)(2) provides, in relevant part, instructions regarding a defendant's failure to comply with conditions of a release:

> If the defendant has failed to comply with the conditions of release, the court may issue a warrant for the arrest of the defendant and enter an order revoking the release order and declaring the bail money deposited or the surety bond, if any, forfeited.

Although this rule refers to the forfeiture of "bail money deposited or the surety bond," the language does not discharge the defendant's obligation to appear. Instead, the language gives the trial court discretion to further compel the obligation to appear with an order revoking the release and an arrest warrant. Because forfeiture of bail money or a surety bond does not discharge the defendant's underlying bond, obligation, or contract with the court to appear as required, I conclude that defendant's obligation to appear was not discharged at the time of the sentencing offense and that he was "on bond" for purposes of MCL 777.56(1)(d).