# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DOUGLAS EUGENE HUEY,

        Defendant-Appellant.

UNPUBLISHED
August 15, 2017

No. 332955
Branch Circuit Court
LC No. 15-091607-FH

Before: BOONSTRA, P.J., and RONAYNE KRAUSE and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals by right his conviction, following a jury trial, of maintaining or operating a laboratory involving methamphetamine, MCL 333.7401c(2)(f). The trial court sentenced defendant, as a fourth-offense habitual offender, MCL 769.12, to a prison term of 15 to 40 years with credit for 229 days served. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This case arises out of a traffic stop of defendant's pickup truck and an attendant consensual search of the vehicle. Defendant had driven Meghan Nelson[1] to Walmart and waited outside while she bought a box of cold medicine containing pseudoephedrine, a chemical ingredient used to manufacture methamphetamine. Defendant then drove Nelson to Home Depot. After entering the store with Nelson, defendant picked out a large bottle of drain cleaner that also contained chemicals used to manufacture methamphetamine, and handed it to Nelson, who paid for it. The purchases of the two items occurred within a time span of 12 minutes.

After they left Home Depot, Michigan State Police Trooper Justin Reed pulled defendant's truck over for a faulty muffler. Sergeant David Crilly of the Coldwater Police Department arrived to assist Reed. As he was pulling the vehicle over, defendant told Nelson to hide the drain cleaner in her purse, and she did so. Defendant consented to a search of his truck, whereupon Reed discovered the medicine containing pseudoephedrine sitting on or near

---

[1] Nelson was also charged in connection with this incident, but entered into a plea agreement with the prosecution in return for her testimony at defendant's trial.

-1-

Nelson's purse at a location inside the truck that had been accessible to both occupants. Crilly discovered the drain cleaner inside of Nelson's open purse. Defendant admitted to Reed that he had driven Nelson to Walmart and Home Depot. He also admitted that he knew that pseudoephedrine and drain cleaner were chemicals used to make methamphetamine and that he knew how to make methamphetamine. Defendant further admitted that he had been in trouble with methamphetamine in the past. However, defendant denied that the medicine and the drain cleaner were his or that he was going to use them to make methamphetamine.

Nelson initially told police that the medicine was for a cold and that the drain cleaner was for a clogged drain at defendant's house. She then changed her story and said that she knew that the items were used to make methamphetamine and that she had bought them for defendant with the intent of trading them for $50 worth of methamphetamine. She then reversed herself yet again and told police that she was not buying the items for anyone. At trial, Nelson testified that she had purchased the items to trade to defendant for methamphetamine, and that she frequently engaged in similar transactions with defendant (in which she would buy ingredients for making methamphetamine and then trade them to defendant for methamphetamine once he had manufactured it). Nelson admitted at trial that she was testifying in accordance with a plea agreement that she had reached with the prosecution.

Defendant was convicted and sentenced as described. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that there was insufficient evidence to support his conviction. Specifically, he argues that the evidence presented at trial was not sufficient to prove that he was in possession of the pseudoephedrine or the drain cleaner, or that he knew that the chemicals would be used to make methamphetamine. We disagree. We review de novo a challenge to the sufficiency of the evidence. *People v Lueth*, 253 Mich App 670, 680; 660 NW2d 322 (2002). To the extent that defendant's argument calls for statutory interpretation, it presents a question of law that we also review de novo. *People v Malone*, 287 Mich App 648, 654; 792 NW2d 7 (2010).

To sustain a conviction, due process requires that there be sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt. *People v Wolfe*, 440 Mich 508, 513-514; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). We review challenges to the sufficiency of the evidence by viewing the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Bennett*, 290 Mich App 465, 471-472; 802 NW2d 627 (2010). In applying this standard, we "must draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Cameron*, 291 Mich App 599, 613; 806 NW2d 371 (2011) (quotation marks and citation omitted).

MCL 333.7401c(1)(b) states in relevant part:

(1) A person shall not do any of the following:

* * *

-2-

(b) Own or possess any chemical or any laboratory equipment that he or she knows or has reason to know is to be used for the purpose of manufacturing a controlled substance in violation of section 7401 . . . .[2]

Possession may be actual or constructive, and it may also be joint or exclusive. *People v Johnson*, 293 Mich App 79, 83; 808 NW2d 815 (2011). "A person has constructive possession if he knowingly has the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons." *People v LaFountain*, 495 Mich 968, 969; 844 NW2d 5 (2014). "Constructive possession exists when the totality of the circumstances indicates a sufficient nexus between the defendant and the [contraband]." *People v Meshell*, 265 Mich App 616, 622; 696 NW2d 754 (2005). Defendant's "presence at the place where the [contraband was] found is not sufficient, by itself, to prove constructive possession; some additional link between the defendant and the contraband must be shown." *People v Fetterley*, 229 Mich App 511, 515; 583 NW2d 199 (1998). Possession is a question of fact, and it can be proven by circumstantial evidence and reasonable inferences arising from the evidence. *People v Strickland*, 293 Mich App 393, 400; 810 NW2d 660 (2011).

We conclude that a rational jury could have concluded beyond a reasonable doubt that defendant constructively possessed the pseudoephedrine and the drain cleaner. Nelson's testimony indicated that defendant exercised dominion or control over the pseudoephedrine and the drain cleaner by having her purchase the chemicals for him and to be used by him. Nelson also testified that defendant instructed her to place the drain cleaner in her purse as he was stopping his vehicle. Reed testified that the pseudoephedrine was in or near the purse and was accessible to both defendant and Nelson. The direct and circumstantial evidence in this case demonstrates a sufficient nexus and link between defendant and the chemicals beyond mere presence in the area where the contraband was found. *Meshell*, 265 Mich App at 622. Therefore, the evidence was sufficient for the jury to conclude that defendant constructively possessed the pseudoephedrine and the drain cleaner.

Further, the evidence was sufficient for the jury to conclude that defendant knew that the chemicals would be used to make methamphetamine. "[B]ecause it can be difficult to prove a defendant's state of mind on issues such as knowledge and intent, minimal circumstantial evidence will suffice to establish the defendant's state of mind, which can be inferred from all the evidence presented." *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008).

Nelson testified that she frequently purchased chemicals to make methamphetamine and traded them to defendant for methamphetamine. She stated that whenever she purchased such chemicals they "always" went to defendant with the knowledge and understanding that he would use them to make methamphetamine. Nelson testified that she and defendant discussed going to the store on the day of their arrest to get the ingredients to make methamphetamine. Nelson also testified that her relationship with defendant almost exclusively revolved around methamphetamine use. Defendant stated to Reed that he knew how to make methamphetamine

---

[2] Methamphetamine is a controlled substance. MCL 333.7214(c)(*ii*).

and that pseudoephedrine and drain cleaner were ingredients used in making methamphetamine. A reasonable juror could have inferred from the evidence presented that defendant knew or should have known that the chemicals would be used to make methamphetamine.

In viewing the evidence in a light most favorable to the prosecution and in drawing all reasonable inferences in support of the jury's verdict, we hold that the evidence was sufficient to convict defendant of maintaining or operating a laboratory involving methamphetamine. *Bennett*, 290 Mich App at 471-472.

### III. JURY INSTRUCTIONS

Defendant next argues that the trial court erred by providing a jury instruction that did not contain each element of the offense. We conclude that defendant waived the issue, and that even if we were to examine it, we would find no error requiring reversal.

Waiver means "the intentional relinquishment or abandonment of a known right." *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011). "One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error. When defense counsel clearly expresses satisfaction with a trial court's decision, counsel's action will be deemed to constitute a waiver." *Id*.

In this case, before instructing the jury, the trial court noted that it went over the proposed jury instructions with both parties present. The trial court then read the proposed jury instructions into the record. When it was done, the trial court asked both parties if they agreed to the instructions. Defense counsel stated, "We're satisfied, Your Honor. No additions, corrections, or deletions." Then, after actually instructing the jury, the trial court asked defense counsel, "[A]re you satisfied with the jury instructions?" Defense counsel responded, "Yes, Your Honor."

Defense counsel clearly expressed satisfaction with the jury instructions, and therefore, waived any issues regarding the jury instructions. Because defendant intentionally relinquished or abandoned a known right, he cannot now seek appellate review of a claimed deprivation of that right, as his waiver extinguished any error. See *Kowalski*, 489 Mich at 503-504.

Even if we were to review the issue, however, we note that to the extent that defendant argues that the jury should have been instructed that the prosecution must prove that methamphetamine was actually manufactured, in order for the enhanced sentence provided in MCL 333.7401c(2)(f) to apply, the argument is contrary to the plain language of the statute.

The primary goal in construing a statute is to determine and give effect to the Legislature's intent. *People v Gardner*, 482 Mich 41, 50; 753 NW2d 78 (2008). The Legislature is presumed to have intended the meaning it plainly expressed. *Id*. "The touchstone of legislative intent is the statute's language. If the statute's language is clear and unambiguous, we assume that the Legislature intended its plain meaning and we enforce the statute as written." *Id*. Statutory language should be construed reasonably and in context, keeping in mind the purpose of the act. *People v Droog*, 282 Mich App 68, 70; 761 NW2d 822 (2009).

Allegations under MCL 333.7401c(1)(b) require the prosecution to prove beyond a reasonable doubt that the defendant owned or possessed a chemical and that he or she knew or had reason to know that the chemical would be used to manufacture a controlled substance. Under MCL 333.7401c(2)(f), a defendant's sentence may be enhanced from 10 years to 20 years' imprisonment if the violation of section (1)(b) involved or was intended to involve the manufacture of methamphetamine. The Legislature's use of the phrase "intended to involve" demonstrates that manufacture of the drug need not be completed in order for the sentencing enhancements to apply. That is, MCL 333.7401c(1)(b) and (2)(f) do not require proving that any controlled substance was actually produced.

Further, to the extent defendant argues that the jury instructions failed to properly instruct the jury that they must find that defendant intended to produce methamphetamine, we disagree. The jury was instructed that in order to convict defendant it must find, "First, that the Defendant owned or possessed a chemical or laboratory equipment. Second, that the Defendant knew or had reason to know that the chemical or laboratory equipment was going to be used to manufacture methamphetamine." We conclude that this instruction fairly presented the issues to be tried and adequately protected defendant's rights. *Kowalski*, 489 Mich at 501-502.

## IV. STANDARD 4 BRIEF

Defendant filed a Standard 4 brief[3] in this case. Defendant's arguments regarding his sentencing enhancement and the jury instructions are addressed in our response to the main appeal. We further conclude that the prosecution did not commit misconduct in submitting the jury instructions which were accepted by the trial court and defense counsel. *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). And defendant's trial counsel was not ineffective in mounting a defense to the elements of the crime for which defendant was convicted, or in approving the jury instructions submitted to the trial court. *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Pickens*, 446 Mich 298, 311, 314; 521 NW2d 797 (1994).

Affirmed.

/s/ Mark T. Boonstra
/s/ Amy Ronayne Krause
/s/ Brock A. Swartzle

---

[3] A brief filed in pro per by a criminal defendant on appeal pursuant to Michigan Supreme Court Administrative Order 2004-6, Standard 4.

-5-