*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JOSHUA LEONCE THOMAS,

        Defendant-Appellant.

UNPUBLISHED
May 19, 2026
11:19 AM

No. 372226
Allegan Circuit Court
LC No. 2023-026247-FH

Before: WALLACE, P.J., and LETICA and FEENEY, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions for: (1) one count of possession with intent to deliver methamphetamine, MCL 333.7401(2)(b)(*i*);[1] (2) one count of felon in possession of a firearm (felon-in-possession), MCL 750.224f; (3) one count of felon in possession of ammunition, MCL 750.224f(7); and (4) three counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b.[2] The trial court sentenced defendant, as a fourth-offense habitual offender, MCL 769.12, to serve: (1) 5 to 40 years, (2) 2 to 10 years, (3) 2 to 10 years, and (4) 2 years in prison, respectively.[3] We affirm.

---

[1] Because this was defendant's second or subsequent offense as to this conviction, his sentence was enhanced pursuant to MCL 333.7413(1).

[2] There are two clerical errors on defendant's judgment of sentence that the trial court should correct: (1) defendant's *possession with intent to* deliver methamphetamine conviction is simply listed as "deliver mfg meth"; and (2) the PACC code for defendant's felon in possession of ammunition conviction is listed as "750.224F6," but it should be listed as "750.224F7."

[3] Defendant's felony-firearm sentences were to be served concurrent to one another but consecutive and proceeding to his other sentences.

## I. FACTS

This case arises out of an ongoing police investigation regarding the distribution of methamphetamine, resulting in a search warrant. Two controlled purchases between a confidential informant and Amber Consentino, defendant's then girlfriend, occurred in the days leading up to the search warrant. Both controlled purchases occurred at the residence that defendant and Consentino shared. The confidential informant "had a brief interaction" with defendant at the first controlled purchase and observed defendant lying on the master bed during the second controlled purchase.

In November 2021, a search warrant was executed at the residence. Defendant was found lying down in the master bedroom where the following relevant items were located: (1) a .45 caliber handgun; (2) $269;[4] (3) a nine-millimeter handgun; (4) nine-millimeter ammunition and magazines; (5) nine rounds of .45 caliber ammunition; (6) containers of methamphetamine found in a safe; (7) a 12-gauge shotgun and 21 shotgun shells; (8) scissors with "white crystal residue"; (9) a debit card in defendant's name; and (10) assorted rifle ammunition, including 50 .357 caliber rounds. Consentino was found in the basement where the following relevant items were located: (1) a loaded nine-millimeter handgun; (2) magazines and nine-millimeter ammunition; and (3) "the bulk of the methamphetamine . . . ." The methamphetamine found totaled about 190 grams and was stored in bags of: (1) 104 grams, (2) 9.2 grams, (3) 8.1 grams, (4) 32 grams, (5) 16.2 grams, and (6) 20 grams.

Defendant was convicted and sentenced, as stated earlier. Defendant moved the trial court for a new trial or an evidentiary hearing, which the trial court denied. Defendant now appeals.

## II. MOTION FOR A MISTRIAL

On appeal, defendant first argues that the trial court erred by denying his motion for a mistrial based on a tainted jury pool. We disagree.

## A. PRESERVATION AND STANDARD OF REVIEW

Defendant preserved this issue by moving for a mistrial in the trial court. See *People v Haynes*, 338 Mich App 392; 410; 980 NW2d 66 (2021). "The denial of a motion for a mistrial is reviewed for an abuse of discretion." *People v Alter*, 255 Mich App 194, 205; 659 NW2d 667 (2003). "This Court will find an abuse of discretion if the trial court chose an outcome that is outside the range of principled outcomes." *People v Beesley*, 337 Mich App 50, 54; 972 NW2d 294 (2021) (quotation marks and citation omitted). "A motion for a mistrial should be granted only for an irregularity that is prejudicial to the rights of the defendant and impairs the defendant's ability to get a fair trial." *Id*. (quotation marks and citation omitted). Accordingly, "for a due process violation to result in reversal of a criminal conviction, a defendant must prove prejudice to his or her defense." *Id*. (quotation marks and citation omitted). "And the extent of the prejudice is a critical factor: The moving party must establish that the error complained of is so egregious

---

[4] $100 of the cash found was from the controlled purchase.

that the prejudicial effect can be removed in no other way." *Id*. (quotation marks and citation omitted).

## B. ANALYSIS

"Determining whether manifest necessity exists to justify the declaration of a mistrial requires a balancing of competing concerns: the defendant's interest in completing his trial in a single proceeding before a particular tribunal versus the strength of the justification for a mistrial." *People v Beck*, 510 Mich 1, 13; 987 NW2d 1 (2022) (quotation marks and citation omitted). "We have stated that a mistrial may only be declared . . . after an on the record consideration and discussion of alternatives with counsel." *Id*. (quotation marks and citation omitted). "To declare a mistrial, the trial court must find the facts justifying the mistrial." *Id*. "This Court accords considerable deference to a judge's determination of whether there is manifest necessity justifying declaration of a mistrial." *Id*. at 14 (quotation marks and citation omitted). "To ensure that the trial court properly exercised its discretion, the reviewing court must consider the 'particular facts' of the case." *Id*. "The ultimate question is not whether this Court would have found manifest necessity, but whether the trial court abused its discretion in finding manifest necessity." *Id*. (quotation marks and citation omitted).

In this case, during jury selection, a prospective juror expressed his belief that defendant was guilty because he was charged and claimed that defendant looked like he used methamphetamine. Defense counsel and the prosecutor agreed that the juror should be dismissed for cause. As voir dire continued, defense counsel inquired if any other jurors were influenced by the prospective juror's comments. A second prospective juror admitted that the comments forced him to question his ability to impartially serve on the jury, noting that he believed defendant was guilty of the charges. The trial court informed the juror of defendant's presumption of innocence and that the burden to prove guilt rested with the prosecution. The second prospective juror admitted he was unsure if he could maintain his impartiality after hearing the comments and was dismissed. The trial court questioned the remaining jurors, asking if the first prospective juror's comment impacted their ability to be impartial and try the case based on the evidence. The remaining jurors asserted they could remain impartial and could follow the trial court's instructions.

Once the jury was empaneled, defense counsel moved for a mistrial, arguing that the jury pool was "polluted" by the comments from the prospective jurors. The prosecution made arguments for and against a mistrial but left the decision to the trial court's discretion. After extensive discussion, the trial court denied defendant's motion, reasoning that: (1) the impartiality of the remaining jurors was addressed during the remainder of the voir dire; (2) the trial court asked the remaining jurors if they could follow its instructions and "set aside outside factors," which they stated they could; (3) the jurors would be administered an oath to "render a true verdict . . . only on the evidence introduced and in accordance with the instructions of the Court"; and (4) the proposed curative instruction precluded the jury from considering the opinions of prospective jurors and relying on evidence when rendering its verdict. The trial court further stated:

> So the Court believes with the information that is presented in the written
> instructions along with the curative instructions, that the defendant will not be

prejudice[d] as it relates to the remark that was made inadvertently and based upon the questioning of the other Jurors, this Court believes that they can independently listen to the evidence of the case and follow the instructions of the Court as it relates to how to decide the case and did not have an effect essentially on their impartiality.

The trial court also addressed the concern some jurors did not disclose their bias, stating:

The argument is made that perhaps [the jurors] did not necessarily come forward with any claim as to whether it truly impacted them or not, and it's hard to ascertain whether there has been an impact or not, if they are questioned and don't respond, the presumption is that if they felt that they were impacted in such a way that they could not be impartial, that they would have advised the Court and the attorneys of such . . . .

On appeal, defendant claims that there was no way to know if the other jurors were impacted by the improper comments, noting a concern that some jurors did not disclose the impact that the comment had on them. Jurors are presumed to be impartial unless their bias is demonstrated. *People v Miller*, 482 Mich 540, 550; 759 NW2d 850 (2008). "The burden is on the defendant to establish that the juror was not impartial or at least that the juror's impartiality is in reasonable doubt." *Id*.

Defendant admits that it is difficult to know if the excused jurors' comments negatively impacted the remaining jurors, but he claims that the doctrine of implied bias establishes prejudice. Defendant relies on *Leonard v United States*, 378 US 544; 84 S Ct 1696; 12 L Ed 2d 1028 (1964) for support. In *Leonard*, 378 US at 544, the United States Supreme Court addressed an issue in which the defendant was tried in two successive cases, and the prospective jurors for the second case heard the guilty verdict from the first case. The defendant objected to selecting jurors from the panel that heard the guilty verdict in the first case, and the trial court overruled that objection. *Id*. The United States Supreme Court determined that the trial court's ruling was clearly erroneous because the prospective jurors who heard the guilty verdict in the first case should have been automatically disqualified from serving in the second trial. *Id*. at 544-545.

Contrary to defendant's claim, the *Leonard* Court did not establish a doctrine of implied bias, and defendant fails to cite Michigan caselaw establishing such a doctrine. Rather, defendant states: "[J]ust because the remaining prospective jurors did not admit to having bias or being influenced by the excused jurors['] . . . comments, does not mean that bias was nonexistent." As previously stated, defendant bears the burden of establishing that the jurors' impartiality was compromised. *Miller*, 482 Mich at 550. In this case, defendant has failed to provide evidence that the jury was compromised, and he ignores the jurors' acknowledgement that they could follow the trial court's instructions, set aside outside factors, listen to the evidence, and apply the law given to them.

Before denying defendant's motion, the trial court considered the issue with the parties, discussed the factual circumstances of the improper comments, considered proposed solutions and instructions, and addressed the parties' lingering concerns. Defendant fails to provide evidence that the remaining jurors were biased. Accordingly, the trial court's actions did not fall outside the range of principled outcomes, and the trial court did not err when it denied defendant's motion

for a mistrial. *Beesley*, 337 Mich App at 54; see *Beck*, 510 Mich at 14 ("This Court accords considerable deference to a judge's determination of whether there is manifest necessity justifying declaration of a mistrial") (quotation marks and citation omitted).

## III. INEFFECTIVE ASSISTANCE

Defendant further argues that defense counsel was ineffective for admitting he mistakenly called a witness. We disagree.

## A. PRESERVATION AND STANDARD OF REVIEW

Defendant preserved this issue by raising it in his motion for a new trial. See *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). "The question whether defense counsel performed ineffectively is a mixed question of law and fact; this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, on the whole record, is left with the definite and firm conviction that a mistake has been made." *People v Dendel*, 481 Mich 114, 130; 748 NW2d 859 (2008) (quotation marks and citation omitted), amended 481 Mich 1201 (2008). "[B]ecause no *Ginther*[5] hearing was held, our review is limited to mistakes apparent on the record." *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

## B. ANALYSIS

In *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984), the United States Supreme Court established a two-prong test that a defendant must meet to prove that his or her counsel's assistance was so defective as to require a new trial. The test is as follows:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. [*Id.*]

Stated more simply, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. To show that a counsel's performance was deficient, a defendant "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id*. at 690. "The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id*

---

[5] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

"Decisions regarding what evidence to present, whether to call witnesses, and how to question witnesses are presumed to be matters of trial strategy, as is a decision concerning what evidence to highlight during closing argument." *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008) (citations omitted). Because there are countless ways to provide effective assistance in each case, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 US at 689 (quotation marks and citation omitted). "Reviewing courts are not only required to give counsel the benefit of the doubt with this presumption, they are required to affirmatively entertain the range of possible reasons that counsel may have had for proceeding as he or she did." *People v Gioglio (On Remand)*, 296 Mich App 12, 22; 815 NW2d 589 (2012) (quotation marks and citation omitted), vacated in part on other grounds 493 Mich 864 (2012).

In this case, defendant argues that defense counsel's performance was deficient because in his closing argument, he admitted that it was a mistake to call Richard Rose as a witness. Defendant's argument ignores Rose's prior impeachment and the context of defense counsel's comment.

Rose testified that he, defendant, and Cosentino knew each other for over 30 years, and he had never seen defendant buy or sell drugs. On cross-examination, Rose admitted that he manufactured drugs and was in custody for the possession of methamphetamine, but he claimed that he only made drugs for personal use. Nonetheless, an officer who was called as a rebuttal witness testified that Rose sold him drugs during an undercover investigation. In closing, defense counsel stated:

> Richard Rose, everybody makes a mistake and sometimes in this business. I should not have called Richard Rose, but what did he say that was important was . . . that he grew up with Ms. Cosentino and . . . [defendant] riding the bus to school everyday. Ms. Cosentino indicated again to (inaudible) [defendant] appear guilty. She said [defendant] introduced her [to Rose]. She ultimately admitted that he might have ridden the school bus with [defendant].

Accordingly, defense counsel acknowledged that Rose's testimony was impeached, but he also highlighted the portions of Rose's testimony that undermined Consentino's credibility: Cosentino testified that she met defendant in high school, and she only met Rose when defendant introduced her later on; however, Rose testified that he, defendant, and Cosentino knew each other for over 30 years.

Although defense counsel admitted that it was a mistake to call Rose as a witness, that admission did not amount to deficient performance. Defense counsel acknowledged the problematic portions of Rose's testimony while also highlighting the beneficial portions, like his history with Cosentino. Which evidence to highlight during closing arguments is a matter of trial strategy. *Horn*, 279 Mich App at 39. Defense counsel's comments were objectively reasonable given Rose's impeachment, and his performance was not deficient. See *Strickland*, 466 US at 689 (we "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance"). Moreover, because Rose's impeachment was already evident

to the jury, defense counsel's acknowledgement of such did not prejudice defendant, i.e., defendant has not shown that there is a reasonable probability that but for defense counsel's acknowledgement, the result of the proceeding would have been different. See *id*. at 694. Instead, defense counsel's acknowledgment directed the jury to the portions of Rose's testimony that the officer did not impeach, thereby maximizing the remainder of Rose's testimony.

## IV. INSUFFICIENT EVIDENCE

Defendant further argues that there was insufficient evidence to support his convictions. We disagree.

### A. PRESERVATION AND STANDARD OF REVIEW

A defendant does not need to take any "special steps" to preserve a challenge to the sufficiency of the evidence. *People v Hawkins*, 245 Mich App 439, 457; 628 NW2d 105 (2001). "This Court reviews de novo challenges to the sufficiency of the evidence." *People v Solloway*, 316 Mich App 174, 180; 891 NW2d 255 (2016). "To determine whether the prosecutor has presented sufficient evidence to sustain a conviction, we review the evidence in the light most favorable to the prosecutor and determine whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt." *People v Smith-Anthony*, 494 Mich 669, 676; 837 NW2d 415 (2013) (quotation marks and citation omitted). "A prosecutor need not present direct evidence of a defendant's guilt. Rather, circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v Williams*, 294 Mich App 461, 471; 811 NW2d 88 (2011) (quotation marks, citation, and alteration omitted). "A factfinder can infer a defendant's intent from his words or from the act, means, or the manner employed to commit the offense." *People v Hawkins*, 245 Mich App 439, 458; 628 NW2d 105 (2001) (citation omitted). "The credibility of witnesses and the weight accorded to evidence are questions for the jury, and any conflict in the evidence must be resolved in the prosecutor's favor." *People v Harrison*, 283 Mich App 374, 378; 768 NW2d 98 (2009). "[W]e will not resolve credibility issues anew on appeal." *People v Milstead*, 250 Mich App 391, 404; 648 NW2d 648 (2002).

### 1. POSSESSION WITH INTENT TO DELIVER METHAMPHETAMINE

Defendant first argues that there was insufficient evidence to prove possession with intent to deliver methamphetamine. We disagree.

The elements of possession with intent to deliver a controlled substance under MCL 333.7401 are as follows: "(1) that a defendant possessed a controlled substance, (2) that the defendant knew he or she possessed the controlled substance, (3) that the defendant intended to deliver the controlled substance to someone else, and (4) the amount of the controlled substance, if applicable." *People v Robar*, 321 Mich App 106, 131; 910 NW2d 328 (2017). As an initial matter, the amount of the controlled substance is not applicable to defendant's conviction under MCL 333.7401(2)(b)(*i*).

Defendant first argues that there was insufficient evidence that he owned or controlled any of the methamphetamine found in this case. We disagree.

"Proof of possession of a controlled substance requires a showing of dominion or right of control over the drug with knowledge of its presence and character." *People v Meshell*, 265 Mich App 616, 621; 696 NW2d 754 (2005) (quotation marks and citation omitted). "Possession may be either actual or constructive, and may be joint or exclusive." *Id*. at 622. "[T]he defendant's mere presence where the controlled substance was found is not sufficient to establish possession; rather, an additional connection between the defendant and the controlled substance must be established." *Id*. "Constructive possession exists when the totality of the circumstances indicates a sufficient nexus between the defendant and the controlled substance." *Id*. "Possession may be proved by circumstantial evidence and reasonable inferences drawn from this evidence." *Id*. (quotation marks and citation omitted).

In this case, the prosecution argued that defendant and Consentino had joint constructive possession over the methamphetamine found in the house. When the search warrant was executed, methamphetamine was found inside a safe in the master bedroom as well as in the basement, and Consentino testified that defendant had access to both locations. Consentino further testified that for the past five years, she and defendant both sold methamphetamine. Although Consentino stated that she handled most of the sales, she explained that if she was not home, defendant would conduct the sales. This testimony was aligned with the officer's testimony that although Consentino conducted both the controlled purchases in this case, defendant was present for brief portions of both interactions. Taken together, this evidence was sufficient for a rational trier of fact to determine that defendant constructively possessed the methamphetamine, i.e., that a sufficient nexus existed between defendant and the methamphetamine. See *Smith-Anthony*, 494 Mich at 676; *Meshell*, 265 Mich App at 621. Although defendant presented two witnesses who testified that defendant was not involved in the sale of methamphetamine, those witnesses were heavily impeached, and the jury evidently did not find them credible. "[W]e will not resolve credibility issues anew on appeal." *Milstead*, 250 Mich App at 404.

Defendant does not directly challenge the second element of possession with intent to deliver; however, we conclude that this evidence was also sufficient for a rational trier of fact to determine that defendant knew he possessed the methamphetamine. See *Smith-Anthony*, 494 Mich at 676; *Robar*, 321 Mich App at 131. Specifically, Consentino's testimony that defendant engaged in selling the methamphetamine, and the officer's testimony that defendant witnessed portions of the controlled purchases, displays defendant's knowledge of the substance.

Defendant further argues that there was insufficient evidence that he intended to deliver the methamphetamine to someone else. We disagree.

" 'Deliver' or 'delivery' means the actual, constructive, or attempted transfer from 1 person to another of a controlled substance, whether or not there is an agency relationship." *People v Collins*, 298 Mich App 458, 462; 828 NW2d 392 (2012) (quotation marks and citation omitted). "*Transfer* is the element which distinguishes delivery from possession." *People v Schultz*, 246 Mich App 695, 703; 635 NW2d 491 (2001) (quotation marks and citation omitted). "Just as proof of actual possession of narcotics is not necessary to prove possession, actual delivery of narcotics is not required to prove intent to deliver." *People v Wolfe*, 440 Mich 508, 524; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). "Intent to deliver has been inferred from the quantity of narcotics in a defendant's possession, from the way in which those narcotics are packaged, and from other circumstances surrounding the arrest." *Id*.

In this case, about 190 grams of methamphetamine was recovered. That volume was stored in bags of: (1) 104 grams, (2) 9.2 grams, (3) 8.1 grams, (4) 32 grams, (5) 16.2 grams, and (6) 20 grams. An officer testified that the weight and number of separate bags indicated that the methamphetamine was packed for distribution and not personal use. The police also recovered scissors with "white crystal residue," scales, and packing materials, further demonstrating distribution. Additionally, Cosentino testified that: (1) for the past five years, she and defendant both sold methamphetamine, and (2) defendant had handled the methamphetamine seized by police in this case. Taken together, this evidence was sufficient for a rational trier of fact to determine that defendant intended to deliver the methamphetamine to someone else. See *Smith-Anthony*, 494 Mich at 676; *Wolfe*, 440 Mich at 524. Again, although defendant presented two witnesses who testified that defendant was not involved in the sale of methamphetamine, those witnesses were heavily impeached, and the jury evidently did not find them credible. "[W]e will not resolve credibility issues anew on appeal." *Milstead*, 250 Mich App at 404.

Accordingly, viewing the evidence in the light most favorable to the prosecution and drawing all reasonable inferences in support of the jury verdict, we hold that the evidence was sufficient to convict defendant of possession with intent to deliver methamphetamine. See *Smith-Anthony*, 494 Mich at 676; *Meshell*, 265 Mich App at 622.

## 2. FELON-IN POSSESSION CONVICTIONS

Defendant further argues that there was insufficient evidence to prove felon-in-possession and felon-in-possession of ammunition. We disagree.

The two essential elements of felon-in-possession are as follows: "(1) the defendant is a felon who possessed a firearm (2) before his right to do so was formally restored under MCL 28.424." *People v Bass*, 317 Mich App 241, 267-268; 893 NW2d 140 (2016). The elements of felon in possession of ammunition are identical to the elements of felon-in-possession, with "ammunition" replacing "a firearm." See MCL 750.224f(7).

In this case, the parties stipulated that defendant had a previous felony conviction of possession of methamphetamine, MCL 333.7403(2)(b)(*i*), and had not yet regained eligibility to possess a firearm or ammunition. Accordingly, the question is whether there was sufficient evidence to establish that defendant possessed a firearm and ammunition. We conclude that there was.

"Possession of a firearm can be actual or constructive, joint or exclusive." *People v Johnson*, 293 Mich App 79, 83; 808 NW2d 815 (2011). "A person has constructive possession if there is proximity to the article together with indicia of control. Put another way, a defendant has constructive possession of a firearm if the location of the weapon is known and it is reasonably accessible to the defendant." *Id*. (quotation marks and citation omitted). "Possession can be proved by circumstantial or direct evidence and is a factual question for the trier of fact." *Id*. "Minimal circumstantial evidence and reasonable inferences can sufficiently prove the defendant's state of mind, knowledge, or intent." *People v Miller*, 326 Mich App 719, 735; 929 NW2d 821 (2019).

In this case, multiple firearms and a variety of ammunition were recovered from the residence. Notably, one of the firearms and 32 rounds of ammunition were recovered from the headboard of the bed that defendant was found lying on. The officer who recovered these items testified that "anyone could access" them. Cosentino admitted that she was the owner of the guns and testified that defendant never used or accessed them; however, she also testified that the guns did not have trigger locks, were not stored in a safe, and could be accessed by anyone. Moreover, Cosentino and defendant's current girlfriend both testified that defendant actively avoided the firearms and ammunition, which further established defendant's knowledge of their existence. Taken together, this evidence was sufficient for a rational trier of fact to determine that defendant had constructive possession of the firearms and ammunition, i.e., that: (1) defendant knew where the firearms and ammunition were, and (2) the firearms and ammunition were reasonably accessible to defendant. See *Smith-Anthony*, 494 Mich at 676; *Johnson*, 293 Mich App at 83.

### 3. FELONY-FIREARM CONVICTIONS

Defendant further argues that there was insufficient evidence to prove felony-firearm. We disagree.

"The elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony." *Bass*, 317 Mich App at 268-269 (quotation marks and citation omitted). Again, "[p]ossession of a firearm can be actual or constructive, joint or exclusive." *Johnson*, 293 Mich App at 83.

As previously analyzed, the evidence in this case was sufficient for a rational trier of fact to: (1) determine that defendant had constructive possession of a firearm; and (2) convict defendant of possession with intent to deliver methamphetamine, which is a felony. See *Smith-Anthony*, 494 Mich at 676; *Johnson*, 293 Mich App at 83; *Meshell*, 265 Mich App at 622; MCL 333.7401(2)(b)(*i*). Accordingly, there was sufficient evidence to prove felony-firearm. See *Smith-Anthony*, 494 Mich at 676; *Bass*, 317 Mich App at 268-269.

Affirmed.

/s/ Randy J. Wallace
/s/ Anica Letica
/s/ Kathleen A. Feeney