# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

ROY HARRIS JAMES, JR.,

       Defendant-Appellant.

UNPUBLISHED
January 18, 2018

No. 333547
Kalamazoo Circuit Court
LC No. 2015-001379-FH

Before: MARKEY, P.J., and SHAPIRO and GADOLA, JJ.

PER CURIAM.

Defendant pleaded guilty to three counts of resisting and obstructing police, MCL 750.81d(1), and three counts of attempted resisting and obstructing police, MCL 750.92. After a bench trial he was also convicted of carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b, and felon in possession of a firearm (felon-in-possession), MCL 750.224f. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to concurrent sentences of 48 months' to 15 years' imprisonment for the felon-in-possession conviction and to two years' imprisonment for his felony-firearm conviction. Defendant appeals by right his bench-trial convictions. We affirm.

On October 1, 2015, John Stolsonburg, a police officer for the City of Kalamazoo, was dispatched to 1518 Bank Street around 10:50 p.m. because a female called 911 concerning someone walking through her driveway into her backyard. Officer Stolsonburg noticed that the gate to the backyard was ajar and then observed a black male, wearing all black. When the light from Officer Stolsonburg's flashlight was on the man, he yelled, "Stop; police," but the subject took off running. By the time Officer Stolsonburg jumped the fence, he testified that he had lost sight of the subject. According to Officer Stolsonburg, the subject appeared to be wearing a "dark stocking cap, and some kind of dark-colored pants."

After hearing a report about a suspicious person, Ashley Halcrow, a police officer for the City of Kalamazoo, helped search for the subject. Officer Halcrow testified that while she was walking down a street near the initial call, she heard rustling in some nearby bushes. When she shined her flashlight on the bushes, a black male dressed in a black hoodie jumped out of a bush. Officer Halcrow later identified this man as defendant. Officer Halcrow then yelled, "Stop; police," and defendant ran away. Officer Halcrow chased after defendant and was able to grab

-1-

onto him. However, defendant "pushed [her] hands away, and [she] fell." Ultimately, defendant was able to get away.

Next, Sergeant Michael Ferguson, a public safety sergeant for the City of Kalamazoo, was dispatched to 1518 Bank Street and testified that after a few minutes of patrolling the area he heard Officer Halcrow call out over the radio that she was chasing after an individual near his location. Since defendant was running in his direction, Sergeant Ferguson parked his patrol car, exited the vehicle, and waited for the subject to show up. Once Sergeant Ferguson spotted defendant, Sergeant Ferguson yelled, "Stop; police," and defendant fled. Sergeant Ferguson pursued defendant and found him hiding in a bush. Defendant then jumped up and started running again, but Sergeant Ferguson was able to tackle defendant and take him into custody. Sergeant Ferguson testified that when he cuffed defendant he noticed that defendant only had a glove on his left hand.

After hearing that defendant was in custody, Officer Halcrow went back to the location where she observed defendant jump out of the bush to see if anything was left behind. The area of the bush where defendant emerged from was matted down, and she recovered a handgun, a black hat, and a single black glove. The recovered items were on top of the matted area of the bush lying next to each other, and Officer Halcrow testified that these items were dry and in newer condition.

Officer Stolsonburg participated in the interview with defendant and testified that he gave defendant his *Miranda* rights before conducting the interview. Defendant made statements during this interview that confirmed he was the individual who came into contact with Officer Stolsonburg and Officer Halcrow earlier in the evening. Officer Stolsonburg asked defendant why he fled from police. Defendant responded that he had been out "looking to steal things from people." But once Officer Stolsonburg mentioned that a gun was located where defendant was arrested, defendant refused to speak about the matter. Officer Stolsonburg then ceased asking questions regarding the gun.

Officer Stolsonburg testified that during defendant's ride to jail in the backseat of Officer Stolsonburg's vehicle, defendant made unsolicited comments about how much time he was going to have to serve for catching a gun charge. Defendant stated that "he was going to have to spend X amount of years in prison for getting a gun charge." No one else was present in Officer Stolsonburg's vehicle when defendant made his statement.

Terry Thomas, a police officer with the Kalamazoo Department of Public Safety, testified that on the night of the incident he reported to the booking room at police headquarters, made contact with defendant, and obtained defendant's clothing. Officer Thomas testified that he collected defendant's pants, shirt, jacket, and glove(s). The gloves were a source of confusion in this case. Officer Halcrow testified that she recovered one glove from the bush that defendant was seen leaving, and Sergeant Ferguson testified that he saw only one left-handed glove on defendant at the time of the arrest. However, Officer Thomas indicated in his report that he collected two gloves from defendant and that Officer Halcrow submitted neither of the gloves into evidence. The trial court asked the prosecutor for a reasonable explanation regarding the gloves. The prosecutor could only speculate that someone did not follow protocol when logging the glove or gloves into evidence. The trial court ultimately found other evidence instructive in

determining possession of the firearm. No DNA analysis was conducted on the hat or either of the gloves.

Before trial, defendant stipulated to several issues. Defendant stipulated that he was a convicted felon and that he was not eligible to possess a firearm because of a previous felony conviction. Defendant also stipulated that the semiautomatic handgun, together with the magazine and cartridges, amounted to an operable firearm as required by the firearm charges. Therefore, defense counsel and the prosecutor only disputed possession of the firearm.

Defendant first argues that he received ineffective assistance of counsel. We disagree.

When a defendant alleges ineffective assistance of counsel, this Court reviews for clear error the trial court's factual findings and reviews de novo constitutional determinations. *People v Johnson*, 293 Mich App 79, 90; 808 NW2d 815 (2011). In this case, because defendant did not create a record in the trial court and his motion to remand was denied, our review "is limited to mistakes apparent on the record." *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

To demonstrate ineffective assistance of counsel, a defendant must (1) "show that counsel's performance was deficient" and (2) "show that the deficient performance prejudiced the defense." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001), quoting *Strickland v Washington*, 466 US 668, 688; 104 S Ct 2052; 80 L Ed 2d 674 (1984) (quotation marks omitted). In order to find ineffective assistance of counsel, defendant must show that counsel's performance fell below an "objective standard of reasonableness" *People v Pickens*, 446 Mich 298, 338; 521 NW2d 797 (1994). Defense counsel is given broad discretion in matters of trial strategy, and defendant must overcome "a strong presumption of effective counsel when it comes to issues of trial strategy." *People v Odom*, 276 Mich App 407, 415; 740 NW2d 557 (2007). Further, the failure to call witnesses only constitutes ineffective assistance of counsel where "the failure to do so deprives the defendant of a substantial defense" that would have an effect on the outcome of the trial. *People v Hoyt*, 185 Mich App 531, 537-538; 462 NW2d 793 (1990); *People v Kelly*, 186 Mich App 524, 526; 465 NW2d 569 (1990). "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). If a defendant shows that defense counsel's performance fell below an objective standard of reasonableness, defendant must then "show the existence of a reasonable probability" that, but for this deficient performance, "the result of the proceeding would have been different." *Carbin*, 463 Mich at 600.

In the present case, defendant first argues that he received ineffective assistance of counsel because of defense counsel's failure to request that the black stocking cap and glove found in the bush near the gun be tested for DNA. "The failure to make an adequate investigation is ineffective assistance of counsel if it undermines confidence in the trial's outcome." *People v Grant*, 470 Mich 477, 493; 684 NW2d 686 (2004). Here, defense counsel's failure to request DNA testing did not undermine confidence in the outcome of trial. Officer Stolsonburg testified that he observed defendant wearing a dark stocking cap. Additionally, Officer Halcrow recovered the black stocking cap, glove, and gun from the same bush from which defendant had been seen emerging, and all of these items were in close proximity to each other. Also, Sergeant Ferguson noticed that defendant was only wearing one glove at the time of

his arrest. Further, the gun did not contain any identifiable prints, and the gloves recovered did not match in color or design. Thus, defendant has failed to demonstrate that it was not a sound trial strategy for defense counsel to forego requesting DNA testing of the recovered items.

"Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy. This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *People v Rockey*, 237 Mich App 74, 76-77; 601 NW2d 887 (1999) (citations omitted). Defense counsel could have been employing a trial strategy that reasonable doubt stemmed from the prosecution's failure to test the black stocking cap and glove for DNA, implying that the prosecution failed to do so because the results may have been unfavorable to its case against defendant. Further, there was a clear risk that DNA testing would have linked defendant to those items and that would have made it difficult for defense counsel to minimize the damaging effect of the evidence. Moreover, defense counsel's failure to request the DNA testing of the black stocking cap and glove was not prejudicial because the trial court properly weighed all the other cumulative evidence. Defendant admitted that he was the subject pursued by police and that he bumped into Officer Halcrow. Defendant also stated that he was attempting to steal things from people and asked how much time he would have to serve for a gun charge. Accordingly, because defendant has not overcome the presumption that defense counsel made a strategic decision not to request DNA testing of this evidence, defendant's claim of ineffective assistance of counsel fails. *Id*.; *Odom*, 276 Mich App at 415.

Defendant also argues that defense counsel was ineffective for failing to inform him of his right under the Due Process Clause to testify. See *People v Simmons*, 140 Mich App 681, 684; 364 NW2d 783 (1985). "If the accused expresses a wish to testify at trial, the trial court must grant the request, even over counsel's objection." *Id*. at 685. Further, if a defendant "decides not to testify or acquiesces in his attorney's decision that he not testify, the right will be deemed waived." *Id*. (quotation marks and citation omitted).

Since this Court's review is limited to the record, there is no support for defendant's argument that counsel failed to advise him of his right to testify. On February 5, 2016, defendant pleaded guilty to six of the eight counts for which he was charged. He then proceeded to a bench trial on the other two counts and was represented by the same attorney. During the plea proceeding, defendant stated that he was aware of his right to a jury trial and all the rights that go along with having a trial. One of these rights was defendant's right to testify at a trial. Defense counsel also presented a signed Advice of Rights form to the trial court. Based on this portion of the record, defendant was aware of his right to testify at trial because of the Advice of Rights form that he signed as well as his admissions to the trial court during the plea proceeding. Thus, defendant waived his right to testify by deciding not to testify or failing to object to his counsel's decision that he not testify. See *Simmons*, 140 Mich App at 684-685.

The defendant also argues that defense counsel was ineffective for failing to move to suppress defendant's statement regarding the gun charge as a violation of defendant's *Miranda* rights. In this case, Officer Stolsonburg testified that he gave defendant his *Miranda* warnings before conducting the interview, and nothing in the record indicates that this was not the case. Additionally, the trial court concluded that defendant's statement was volunteered, not the result of custodial interrogation. Defendant made his statement regarding the gun charge after his

interview was conducted but before reaching the jail. Officer Stolsonburg testified that he immediately stopped questioning defendant concerning the gun as soon as defendant indicated he did not want to speak on that matter. Defendant's subsequent statement was unsolicited and unprovoked, and there is no evidence of police misconduct or coercion. Consequently, *Miranda* warnings are not relevant to admissibility of the statement. See *People v Raper*, 222 Mich App 475, 479-480 ; 563 NW2d 709 (1997) (Voluntary statements made by a person in custody that are not in response to interrogation do not fall within the purview of *Miranda*.). Thus, defendant's statement was admissible, as his statement was not elicited in violation of his constitutional rights. Accordingly, defense counsel's failure to move to suppress defendant's statement did not constitute ineffective assistance because failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel. See *Ericksen*, 288 Mich App at 201.

Next, defendant argues that his convictions for felon-in-possession and felony-firearm were against the great weight of the evidence, and the evidence was insufficient to convict defendant beyond a reasonable doubt. We review a great-weight claim to determine "whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *People v Musser*, 259 Mich App 215, 218-219; 673 NW2d 800 (2003). Conflicts in the testimony or the credibility of witnesses are generally insufficient grounds for granting a new trial. *People v Lemmon*, 456 Mich 625, 643; 576 NW2d 129 (1998). Even if this Court disagrees with the verdict, we only disturb the lower court's decision if there is "a real concern that an innocent person may have been convicted or that it would be a manifest injustice to allow the guilty verdict to stand." *Id*. at 644 (quotation marks and citation omitted).

Additionally, this Court reviews de novo a defendant's challenge to the sufficiency of the evidence. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). This Court views the evidence in the light most favorable to the prosecution and determines whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Nowack*, 462 Mich 392, 399-400; 614 NW2d 78 (2000).

To convict defendant of felony firearm, MCL 750.227b, the prosecutor must establish "that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony." *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999).

Moreover, to establish a violation of MCL 750.224f, felon in possession of a firearm, the prosecution must establish that a defendant, who has been convicted of a specified felony, possessed a firearm. Possession of a firearm can be actual or constructive, joint or exclusive, and may be proved by direct or circumstantial evidence. *Johnson*, 293 Mich App at 83. A defendant constructively possesses a firearm when he knows the location of the weapon, and it is reasonably accessible to him. *Id*.

The test to determine whether a verdict is against the great weight of the evidence is whether "the evidence preponderates heavily against the verdict so that it would be a miscarriage of justice to allow the verdict to stand." *Lemmon*, 456 Mich at 627. "A verdict may be vacated only when it 'does not find reasonable support in the evidence, but is more likely to be attributed to causes outside the record such as passion, prejudice, sympathy, or some extraneous influence.' " *People v DeLisle*, 202 Mich App 658, 661; 509 NW2d 885 (1993) (citation

omitted). When evaluating a great weight of the evidence claim, a reviewing court may not act as a "thirteenth juror" or attempt to resolve credibility questions anew. *Lemmon*, 456 Mich at 636, 647.

First, defendant argues that his convictions were against the great weight of the evidence. Defendant contends that there is no evidence indicating that defendant possessed the firearm. Defendant argues that there is no DNA evidence tying him to the gun and no testimony indicating that defendant brandished a gun.; however, considering the evidence as a whole, the circumstantial evidence of defendant's possession of the gun was such that the evidence did not heavily preponderate against the verdict. See *Lemmon*, 456 Mich at 627. Possession of a firearm can be constructive, and it was reasonable for the trial court to determine that defendant had possession of the firearm since he had both close physical proximity to it and he indicated in an unsolicited statement that he would have to do a certain amount of time for the gun charge. See *Johnson*, 293 Mich App at 83. Officer Halcrow observed defendant in the bush where the gun, black stocking cap, and glove were found. Defendant admitted to being out that evening for the specific purpose of committing larceny, and the hat found in the bush matched the description of the hat that defendant had been wearing a few minutes earlier. The trial court viewed the officers' testimony as credible despite the inconsistencies regarding the police evidence log. See *Lemmon*, 456 Mich at 636, 647. Thus, defendant's convictions were not against the great weight of the evidence, and it was not a miscarriage of justice to allow the verdict to stand. *Id*. at 627; *Musser*, 259 Mich App at 218-219.

Defendant also argues that the prosecutor failed to present sufficient evidence that he possessed the gun at issue to support his convictions. Here, viewing the evidence in the light most favorable to the prosecution, it is clear there was sufficient evidence to support defendant's convictions. Although the prosecutor presented mainly circumstantial evidence of defendant's identity as the possessor of the gun, circumstantial evidence and reasonable inferences arising from the evidence can constitute satisfactory proof of the elements of the crime. See *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999); *Johnson*, 293 Mich App at 83.

Other evidence also supplied reasonable inferences that defendant was the possessor of the gun. Defendant admitted that he fled from multiple officers and attempted to hide from them in two separate bushes. He stated that he had seen and fled from Officer Stolsonburg and had contact with Officer Halcrow. Officer Halcrow testified that the gun was found next to a black stocking cap and glove in the same area where defendant exited the bush and that the items appeared dry and in newer condition. The black stocking cap matched the description of the hat that Officer Stolsonburg testified defendant had been wearing. Further, when defendant was arrested, Sergeant Ferguson testified that defendant was wearing a single glove. Thus, this evidence is sufficient to enable the trial court to rationally find that defendant was aware of the gun and that it was reasonably accessible to him. See *Nowack*, 462 Mich at 399-400. Accordingly, there was sufficient evidence that defendant constructively possessed the gun that evening to support a felony-firearm conviction as well as a felon-in-possession conviction. See *Johnson*, 293 Mich App at 83.

Moreover, the parties stipulated that defendant was a previously convicted felon who was not allowed to possess a firearm under the felon-in-possession statute. Thus, if the evidence presented established that defendant "possessed" the firearm in question, a rational trier of fact

-6-

could find beyond a reasonable doubt that the elements of the charged crimes were met. See *Avant*, 235 Mich App at 505. As stated above, the prosecutor established that the firearm was found in the bush that Officer Halcrow testified defendant emerged from the evening of the incident. No one else was present in the neighborhood or near that bush that night. The prosecutor established that the gun was loaded and easily accessible to defendant when he was in that bush and in the nearby area. Defendant also admitted that he had attempted to commit a felony by trying to commit larceny. Therefore, a rational trier of fact could have inferred that defendant knew of the location of the firearm and could have found beyond a reasonable doubt that the elements of the charged crimes were met. Accordingly, there was sufficient evidence to support the trial court's conclusion in regard to defendant's convictions and reversal is unwarranted. See *Nowack*, 462 Mich at 399-400.

We affirm.

/s/ Jane E. Markey
/s/ Douglas B. Shapiro
/s/ Michael F. Gadola