*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

UNPUBLISHED
July 2, 2020

v

No. 346507
Wayne Circuit Court
LC No. 18-004246-01-FC

ALEXANDER WADE MIMS,

        Defendant-Appellant.

Before: REDFORD, P.J., and CAVANAGH and SERVITTO, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of one count each of being a felon in possession of a firearm while ineligible (felon-in-possession), MCL750.224f; possession of a firearm in the commission of a felony (felony-firearm), MCL 750.227b; and carrying a concealed weapon, MCL 750.227.[1] The trial court sentenced defendant, as a second habitual felony offender, MCL 769.10., to concurrent terms of 30 months to five years' imprisonment for the felon-in-possession and carrying a concealed weapon convictions, to be served consecutive to two years' imprisonment for the felony-firearm conviction. Because there was sufficient evidence to convict defendant of all three charges, the trial court did not err in denying defendant's motion for Judgment Notwithstanding the Verdict (JNOV)/new trial. However, the trial court's scoring of Offense Variables (OVs) 1, 3, and 12 was erroneous and defendant is entitled to have his guidelines rescored. We thus affirm in part, reverse in part, and remand for resentencing.

On February 19, 2018, Erik Key (Key) went to a house in Detroit with the intent to sell marijuana to an occupant of the house. At trial, Key testified as follows. On that day, defendant eventually got into his car for the transaction. Defendant pulled out a gun and a struggle occurred,

---

[1] Defendant was acquitted of one count armed robbery, MCL 750.529; assault with the intent to murder, MCL 750.83; assault with the intent to do great bodily harm less than murder, MCL 750.84 (in the alternative to the assault with the intent to murder charge); and being armed with a dangerous weapon, MCL 750.226. He was also acquitted of felony-firearm charges related to each of the underlying offenses for which he was acquitted.

during which Key was shot. Key then reached for his own gun and shot defendant in the leg. Defendant fell out of Key's car, and Key drove away. Key threw away his gun and went to a gas station for help with his injuries. Detroit police responded to the gas station and Key was taken to the hospital for treatment. While in the hospital recovering from surgery required for his gunshot wounds, Key identified defendant from a photo lineup.

On February 22, 2018, a Detroit police officer was dispatched to the hospital where Key was being treated to take a gunshot report from another injured person—defendant. Defendant told the officer that he had been shot in the upper thigh on February 21, 2018, during a robbery attempt, while he was walking down the street.

Defendant was ultimately charged with the crimes stemming from the incident with Key. As indicated above, he was convicted of carrying a concealed weapon, felon-in-possession, and felony-firearm, and sentenced accordingly. Defendant thereafter filed a motion for JNOV/new trial, which the trial court denied. This appeal followed.

On appeal, defendant first contends that the jury acquitted him of most of the charges because there was clearly insufficient evidence that he committed an armed robbery upon Key or assaulted Key with the intent to either commit murder or great bodily harm less than murder. There was also insufficient evidence, according to defendant, to convict him of felon-in-possession, felony-firearm, and carrying a concealed weapon as those were attendant to the acquitted charges and the trial court erred in denying his motion for JNOV/new trial. We disagree.

We review the trial court's decision on a motion for JNOV or for a new trial for an abuse of discretion. See *People v Miller*, 482 Mich 540, 544; 759 NW2d 850 (2008). In reviewing a motion for JNOV, a court must view the evidence and all legitimate inferences in the light most favorable to the nonmoving party to determine whether there is sufficient evidence presented to create a triable issue for the jury. *Craig ex rel Craig v Oakwood Hosp*, 471 Mich 67, 77; 684 NW2d 296 (2004); *Genna v Jackson*, 286 Mich App 413, 417; 781 NW2d 124 (2009). The de novo standard of review is applicable in reviewing a defendant's challenge to the sufficiency of the evidence. *People v Harverson*, 291 Mich App 171, 177; 804 NW2d 757 (2010).

The elements of the offense of being a felon-in-possession are: "(1) the defendant is a felon who possessed a firearm (2) before his right to do so was formally restored[.]" *People v Bass*, 317 Mich App 241, 268; 893 NW2d 140 (2016). It was stipulated during trial that defendant had a prior felony. It is also undisputed that at all relevant times, defendant could not legally possess a weapon pursuant to MCL 750.224f and could be found guilty of being a felon in possession if the jury found beyond a reasonable doubt that defendant possessed a gun.

The felony-firearm statute, MCL 750.227b(1), provides that a "person who carries or has in his or her possession a firearm when he or she commits or attempts to commit a felony . . . is guilty of a felony . . . . " Thus, the crime of felony-firearm has two elements: a defendant must possess the firearm and he must do so during the commission of or attempted commission of a felony. *People v Johnson*, 293 Mich App 79, 82-83; 808 NW2d 815 (2011); MCL 750.227b. Possession can be proved by circumstantial or direct evidence and is a question for the trier of fact to resolve. *Id*. at 83. The underlying felony establishing the elements of felony-firearm was defendant's status as a felon in possession of a firearm.

-2-

Viewing the evidence in a light most favorable to the prosecution, there was sufficient evidence for a jury to find beyond a reasonable doubt that defendant possessed a firearm. Key testified that defendant got into Key's vehicle on the night of this offense, for purposes of engaging in a drug deal, and defendant pulled out a gun. According to Key, defendant shot at Key, which resulted in serious injuries requiring surgery. Key positively identified defendant as the shooter, within days of the incident, from a photographic lineup. This evidence was sufficient for a jury, which is charged with determining issues of witness credibility and the weight of the evidence, *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008), to find that defendant did, in fact, possess a weapon. The same evidence was also sufficient for the jury to find beyond a reasonable doubt that defendant was a felon-in-possession of a weapon.

Under MCL 750.227, a conviction of carrying a concealed weapon requires proof beyond a reasonable doubt that a defendant either knowingly possessed a concealed weapon, *People v Hernandez–Garcia*, 477 Mich 1039, 1040 n. 1; 728 NW2d 406 (2007), or knowingly carried a weapon, whether concealed or otherwise, in a vehicle operated or occupied by the defendant, *People v Nimeth*, 236 Mich App 616, 622; 601 NW2d 393 (1999). The only intent necessary for carrying a concealed weapon is "an intent to do the act prohibited, to knowingly carry the weapon on one's person or in an automobile." *People v Brown*, __ Mich App __; __NW2d __ (2019); slip op at 2.

There was no testimony or evidence that defendant was licensed to carry a concealed weapon and, in fact, defendant was not authorized to carry a weapon due to his status as a felon. Key testified that defendant came out to his vehicle carrying a cell phone. When defendant got into Key's car, he pulled out a gun, which had not previously been visible to Key, and shot Key. Thus, the evidence was sufficient to find that defendant carried a concealed weapon, in violation of MCL 750.227.

Because there was sufficient evidence to convict defendant of all three charges, the trial court did not err in denying the motion for JNOV/new trial. Defendant nevertheless asserts he was entitled to JNOV/new trial because of conflicting jury instructions. This Court generally reviews claims of instructional error de novo. *Lewis v LeGrow*, 258 Mich App 175, 211; 670 NW2d 675 (2003). However, error alone in instructing the jury is insufficient to set aside a criminal conviction. "Instead, a defendant must establish that the erroneous instruction resulted in 'a miscarriage of justice." *People v Schaefer*, 473 Mich 418, 441–42; 703 NW2d 774 (2005), holding mod on other grounds by *People v Derror*, 475 Mich 316; 715 NW2d 822 (2006), citation omitted. See also, MCL 769.26. Moreover, because this issue was unpreserved, we review it for plain error affecting substantial rights. See *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

Defendant claims that the trial court's instruction to the jury—that all charged counts pertained to the events of February 19, 2018, specifically—conflicted with its instruction in response to a question posed by the jury during deliberations—that counts 4 and 10 pertained to events that occurred "on or about" February 19, 2018. According to defendant, these purportedly conflicting instructions were enough, standing alone, to warrant the granting of a new trial and the court's refusal to do so constituted an abuse of discretion.

A defendant's failure to make a timely objection to a jury instruction constitutes a forfeiture of a claim that the instruction was improper, and relief is only warranted if defendant can show

plain error affecting his substantial rights. *Carines*, 460 Mich at 763. If, however, a party expresses satisfaction with the trial court's instructions, it constitutes a waiver that extinguishes any error regarding the instructions. *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000) (stating that "[o]ne who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error.").

First and foremost, at the conclusion of the trial court's reading of the final jury instructions, the trial court instructed the jury that the prosecutor must prove beyond a reasonable doubt that the crimes occurred "on or about" February 19, 2018. Defense counsel stated that he had no objections to this instruction as given. Because defendant, through counsel, affirmatively expressed satisfaction with all of the trial court's instructions, including that which employed the now-challenged "on or about" language, defendant waived the purported instructional error, *Carter*, 462 Mich at 215, and the trial court did not abuse its discretion in denying defendant's motion for JNOV/new trial based on the alleged instructional error.

Addressing the alleged error on its merits requires no different conclusion. The felony complaint charging defendant with all offenses lists the date of offense(s) as February 19, 2018. At trial, Key unequivocally testified that on February 19, 2018, defendant attempted to rob him and, during a struggle over a gun possessed by defendant, defendant shot him and that he (Key) thereafter shot at defendant with a gun that Key owned and possessed, hitting defendant once. Defendant, however, testified at trial that he did not have any interaction with Key on February 19, 2018, and that he appeared at the hospital on February 21, 2018, to obtain treatment for a gunshot wound he had accidentally self-inflicted during an unidentified assailant's attempt to rob him. This testimony apparently caused some confusion on the jury's part as to whether all of charges against defendant stemmed from the February 19, 2018, incident with Key, or whether some of the charges, specifically those of felon-in-possession and one of the felony-firearm charges, stemmed from defendant's possession of a firearm on February 21, 2018—the date defendant testified he was injured when someone attempted to rob him. To clarify and resolve its confusion, the jury sent out several notes during its deliberations, three of which are relevant here.

In its first note, the jury asked whether the felon-in-possession charge pertained to the assault on February 19, 2018, or whether it pertained to the alleged self-inflicted wound for which defendant went to the hospital on February 21, 2018. Before the trial court could confer with the attorneys with respect to the question, the jury sent out a second note asking several things.

The second note asked first if the armed robbery, assault with intent to murder, and assault with intent to do great bodily harm less than murder, along with their attendant felony-firearm charges, "would require us to believe that Mr. Mims was present at the scene of the crime on February 19th." The prosecutor and defense counsel both agreed that the answer to that question should be "yes."

The second note next asked whether the felon-in-possession charge and the attendant felony-firearm charge "are not dependent on Mr. Mims being present at the scene of the crime on February 19th." As to this specific question, defense counsel stated that the answer should be "no," because "the People have the burden of proof that these crimes had occurred on or about February 19th, 2018." Defense counsel further stated that:

The statements that were elicited through myself and the prosecution pertaining to Mr. Mims' self-inflicted wound had occurred thereafter, which would have been the 21st, and there is no evidence other than statements that were obtained from Mr. Mims, Sr., as well as from his cousin Marquise Clark. So, I don't really know that that is one of the charges that the People have brought to the table, as it were. It was more of an explanation as to how he had wounded himself, but he's not actually being charged with wounding himself.

Defense counsel, then, indicated an understanding that all charges pertained to the specific date of February 19, 2018.

Finally, the second jury note asked whether the carrying-with-unlawful-intent charge as well as the carrying a concealed weapon charge and its attendant felony-firearm charges were linked to the February 19, 2018, date. The trial court indicated that because the jury instructions said "on or about" it could answer the question by telling the jury that "the prosecution has charged the defendant with these crimes for what occurred on or about February 19th in Wayne County." Defense counsel pointed out that the date of the offense on the information is February 19, 2018, not "on or about" that date. The prosecutor stated that it could make a motion to amend the information to read "on or about" but that the jury instructions already say "on or about." The trial court then stated that its inclination was to tell the jurors that based on the information filed, the prosecutor is alleging that all of the crimes are based on defendant being at the Key shooting on February 19, 2018. Both counsel agreed.

The jury was brought in and the trial court answered the jury questions by first instructing the jury that the armed robbery, assault with intent to murder, assault with intent to do great bodily harm less than murder, and the three felony-firearm charges attendant to those crimes required the jury to believe that defendant was present as the February 19, 2018, scene of the crime when Key was shot. It further instructed the jury that the carrying-with-unlawful-intent and its attendant felony-firearm charges, along with the carrying a concealed weapon charge, were linked to the crime that occurred on February 19, 2018. Both counsel stated they were satisfied with that instruction. The trial court also instructed that the felon-in-possession and its attendant felony-firearm charge were not dependent on defendant being present at the scene of the crime on February 19, 2018, but further explained that with respect to the felon-in-possession charge, that defendant was not charged with possessing a firearm on the February 21, 2018, date he allegedly self-inflicted a gunshot wound; instead, defendant was charged *only* for possessing a firearm on February 19, 2018. The trial court instructed, "[Defendant] is not being charged for possessing a firearm on February 21 which he claims—which he claims to have been a self-inflicted wound. He's being charge by the prosecution for crimes that occurred on February 19th where Mr. Key was the one that received gunshot wounds and alleged that [defendant] received a gunshot wound at that locations . . . ." Both counsel expressed satisfaction with the instructions as given.

When the jury resumed deliberations on the following court date, it submitted a third note. Defendant's trial counsel was not present at that time, but two other attorneys from his office were filling in that day, with no objections from defendant concerning their appearance in his counsel's stead. After giving stand-in counsel a brief overview of the case, the trial court indicated that the jury had previously sent out several questions and the counts "that seem to be giving them questions apply to . . . felon-in-possession of a firearm and . . . the felony-firearm that pertains to

that particular count." The trial court stated that it now had several more questions from the jury before it. First, the jury asked whether the felon-in-possession and attendant felony-firearm charges apply to the fact that defendant had a prior felony conviction. The trial court explained to counsels that it had previously tried to explain to the jury that there had been a stipulation that defendant had been convicted of a specified felony so that the answer to that question would be "yes." The jury also asked in this third note whether the felon-in-possession and attendant felony-firearm charges pertained to the self-inflicted gunshot wound suffered by defendant on February 21, 2019, or whether they pertained to the incident against Key on February 19, 2018.

The trial court indicted that it felt the best answer was to instruct that the prosecutor, in those counts, alleges that defendant possessed a firearm on February 19, 2018. Both counsel agreed. The trial court then instructed the jury that the two counts they had asked about applied to the fact that defendant had a prior felony conviction, and defendant had stipulated that he had a prior felony conviction and was not eligible to possess a firearm on February 19, 2018. It further instructed that the prosecutor had to prove all the elements of those two counts "beyond a reasonable doubt as to *on or about* February 19" (emphasis added). While the trial court did, in fact, state "on or about February 19" in answer to this question rather than simply "February 19," it then asked "Any objections to the manner in which the way the Court handled these questions to the jury?" Both the prosecutor and stand-in defense counsel answered no.

Clearly, defendant, through counsel, affirmatively expressed satisfaction with *all* of the trial court's instructions. Thus, defendant waived any instructional error at every step. *Carter*, 462 Mich at 215. While defendant contends that stand-in counsel was not aware of the significance of the exact date, trial counsel was present when the trial judge gave the final instructions to the jury, which contained the challenged "on or about" language. Trial counsel did not object to the jury instruction at that time. There is thus no reason to believe that stand-in counsel should have objected to the use of the phrase "on or about February 19," or that if trial counsel had been present, he would have objected to the second use of this phrase.

Moreover, when an error is alleged in the trial court's instructions to the jury, the instructions must be reviewed "in their entirety to determine whether there [was an] error requiring reversal." *Gonzalez*, 256 Mich App at 225 (citation omitted). We will not "reverse a conviction if the instructions fairly presented the issues to be tried and sufficiently protected the defendant's rights." *Id*.

Here, while the jury twice received an instruction including the phrase "on or about February 19, 2018," the jury was also clearly told, several times, that defendant was *not* charged with possessing a firearm on February 21. The only date that defendant's charges could have stemmed from, then, was the February 19, 2018, date on which the incident with Key occurred. Additionally, defendant and the prosecutor often referenced February 19, 2018, as the date of the offense throughout the trial. Thus, the jury was fairly presented the issues to be tried and the instructions sufficiently protected defendant's rights.

Finally, defendant notes that the jury must not have believed Key's testimony, as it acquitted him of most of the charges. However, "[w]hile it is an appellate court's duty to review jury verdicts, it may not speculate regarding a jury's conclusions." *People v Garcia*, 448 Mich 442, 460 n 25; 531 NW2d 683 (1995). And "[t]his Court will not interfere with the trier of fact's

role of determining the weight of the evidence or the credibility of witnesses." *Kanaan*, 278 Mich App at 619. In sum, there was sufficient evidence to convict defendant of the three charges and the court did not err in denying defendant's motion or JNOV/new trial.

Defendant next argues that the trial court, in sentencing him, assessed OV points consistent with him being found guilty of the acquitted offenses jury acquitted defendant of the charges concerning use of a firearm. Defendant avers that where the jury did not find that certain offenses were proven beyond a reasonable doubt, the trial court could not engage in fact-finding to essentially find that they were and then assess defendant points on OVs 1, 3, and 12 consistent with a finding of guilt. We agree.

This Court reviews the proper interpretation and application of the statutory sentencing guidelines de novo, as they are questions of law. *People v Francisco*, 474 Mich 82, 85; 711 NW2d 44 (2006). The de novo standard of review also applies to constitutional questions. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2 246 (2002).

As of 2015, when our Supreme Court decided *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), the Michigan sentencing guidelines were deemed to be unconstitutional to the extent that they mandated judicial fact-finding to score them and required adherence. *People v Steanhouse*, 500 Mich 453, 466–67; 902 NW2d 327 (2017). The guidelines are now advisory in all applications. *Id*. at 466. But sentencing courts must still consult and consider the applicable guidelines range when imposing a sentence and justify the sentence imposed in order to facilitate appellate review. *Id*. at 470 (quotation marks and citation omitted). If the trial court clearly erred by finding that a preponderance of the evidence supported an OV score or otherwise erred by applying the facts to the OVs, and if the scoring error resulted in an alteration of the minimum sentence range, a defendant is entitled to resentencing. *People v Biddles*, 316 Mich App 148, 156; 896 NW2d 461 (2016).

Relevant to the instant matter, last year our Supreme Court addressed judicial fact-finding in *People v Beck*, 504 Mich 605; ___NW2d___( 2019). In that case, the defendant was convicted by jury of felon-in-possession and felony-firearm, second offense, but acquitted of open murder, carrying a firearm with unlawful intent, and two additional counts of felony-firearm attendant to those charges. The applicable guidelines range for the felon-in-possession conviction was 22-76 months, but the trial court sentenced defendant to 240-400 months, to be served consecutive to a mandatory five-year term for the felony firearm, second offense, conviction. *Id*. at 610. In imposing sentence, the trial court stated that the jury "could not find, beyond a reasonable doubt, that the defendant committed the homicide. But the Court certainly finds that there is a preponderance of the evidence that he did." *Id*.

The issue presented in *Beck* was "whether the Sixth and Fourteenth Amendments permit the use of acquitted conduct to increase a defendant's sentence." *Id*. at 618. The *Beck* Court noted that "[a]cquitted conduct is, of course, different from uncharged conduct—acquitted conduct has been formally charged and specifically adjudicated by a jury." *Id*. at 620.

> A defendant is entitled to a presumption of innocence as to all charged conduct until proven guilty beyond a reasonable doubt, and that presumption is supposed to do meaningful constitutional work as long as it applies . . . . We can think of no reason

that a jury's finding the defendant not guilty of a charge undoes that guarantee. In fact, the jury's view that the state did not meet its burden of proof should cut the other way. [*Id*. at 621]

Thus, "[t]he difference between acquitted conduct and uncharged bad acts presented at sentencing is critical and constitutional. Acquitted conduct shows up at sentencing in the company of the due-process protection of the presumption of innocence; uncharged conduct does not." *Id*. Moreover:

> When a jury has made no findings (as with uncharged conduct, for example), no constitutional impediment prevents a sentencing court from punishing the defendant as if he engaged in that conduct using a preponderance-of-the-evidence standard. But when a jury has specifically determined that the prosecution has not proven beyond a reasonable doubt that a defendant engaged in certain conduct, the defendant continues to be presumed innocent. To allow the trial court to use at sentencing an essential element of a greater offense as an aggravating factor, when the presumption of innocence was not, at trial, overcome as to this element, is fundamentally inconsistent with the presumption of innocence itself. [*Id*. at 626-627] (quotation marks and citation omitted).

Citing principals of fundamental fairness and common sense, the *Beck* Court found that conduct protected by the presumption of innocence, as that of acquitted conduct, cannot be evaluated using a preponderance-of-the-evidence standard without violating due process. *Id*. Thus, it held that reliance on acquitted conduct at sentencing is barred by the Fourteenth Amendment. *Id*. at 11. And "[b]ecause the sentencing court punished the defendant more severely on the basis of the judge's finding by a preponderance of the evidence that the defendant committed the murder of which the jury had acquitted him, it violated the defendant's due process protections." *Id*. The same holds true here, as conceded by the prosecution at oral argument in this matter.

In assessing defendant 25 points for OV 1, the trial court stated that the prosecution proved by a preponderance of the evidence that defendant was present on February 19, 2018, in Key's car, that he was in possession of a gun, and that he discharged the gun towards a human being, actually hitting Key. These factual findings by the trial court were clearly rejected by the jury, as it acquitted defendant of all charges relating to the firing of a weapon at Key. The trial judge's scoring of OV 1 at 25 points, being based on facts not found by the jury and, in fact, expressly rejected by it, violates the principle and law expressed in *Beck*, supra. The trial judge thus impermissibly scored OV1 at 25 points.

Similarly, in assessing defendant 25 points for OV 3, the trial court stated that, based on the testimony presented and the medical records admitted at trial, Key received a life-threatening injury during the gunfight with defendant, and therefore OV 3 was properly scored at 25 points. The trial court stated that these judicial findings of fact were supported by a preponderance of the evidence, and that was the standard for making its findings. Again, since the jury acquitted

defendant of the charges linking him to the shooting of Key, the trial court erred in assessing 25 points under OV 3.[2]

Finally, in scoring OV 12 at 25 points, the trial court reasoned that defendant engaged in armed robbery, assault with intent to murder, and carrying a weapon with unlawful intent, based on the testimony of Key, which it found credible. As with the other two OVs challenged on appeal, the jury was the factfinder in this matter and explicitly found that defendant did not engage in armed robbery or the other specific actions relied upon by the court in assessing defendant 25 points for OV 12. As directed in *Beck*, when a jury has specifically determined that the prosecution has not proven beyond a reasonable doubt that a defendant engaged in certain conduct, the trial court may not use the charged but acquitted conduct at sentencing. *Beck* at 10. Having violated this explicit directive, the trial court erred in assessing 25 points under OV 12.

In *Beck*, our Supreme Court held that due process principles precluded the increase of a sentence based on the sentencing judge's finding by a preponderance of the evidence that defendant committed the murder of which the jury had acquitted him. *Beck*, supra. Here, due process principles preclude an increase of defendant's sentence based on the trial court judge's finding by a preponderance of the evidence that defendant committed offenses of which the jury acquitted him.

As a result of the incorrect scoring, defendant's guidelines must be rescored. The rescoring will result in a different guidelines range. A defendant is entitled to be sentenced by a trial court on the basis of accurate information and accurately scored guidelines. *Francisco*, 474 Mich at 88. Because defendant's sentence here is based upon an inaccurate calculation of the guidelines range and is, therefore, inconsistent with the law, and because defendant's guidelines will be affected by the properly scored OVs, defendant is entitled to be resentenced. *Id*. at 92.

Affirmed in part, reversed in part, and remanded for resentencing. We do not retain jurisdiction.

/s/ James Robert Redford
/s/ Mark J. Cavanagh
/s/ Deborah A. Servitto

---

[2] The trial court did ask defendant for case law to rebut that it was allowed to make judicial findings of facts inconsistent with the jury's verdict. *Beck*, supra, was decided by our Supreme Court on July 29, 2019—after defendant was sentenced.