*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* JONES, Minors.

UNPUBLISHED
April 28, 2022

No. 358781
Ottawa Circuit Court
Family Division
LC No. 2020-092480-NA

Before: LETICA, P.J., and REDFORD and RICK, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court order terminating her parental rights to her two minor children, AJ and EJ, under MCL 712A.19b(3)(c)(*i*) (conditions of adjudication continue to exist), and MCL 712A.19b(3)(j) (reasonable likelihood of harm to the child if returned to the parent).[1] Respondent argues that the trial court clearly erred when it found by clear and convincing evidence that there was a statutory ground sufficient to terminate her parental rights and that she was provided ineffective assistance of counsel. We affirm.

## I. BACKGROUND

In March 2020, petitioner, Department of Health and Human Services (DHHS), petitioned the trial court to remove the children from respondent's care because respondent had suicidal ideations, mental health concerns, and emotional instability. Petitioner also alleged that there had been incidents of domestic violence between respondent and father and that respondent had failed to comply with an existing safety plan. Respondent pleaded responsible to the allegations in the petition. The children were released to respondent under the supervision of the DHHS. The trial court entered a no-contact order between respondent and the father. Respondent and father repeatedly violated the no-contact order. Subsequently, in May 2020, as a result of those violations, the children were removed from respondent's care and placed into foster care.

---

[1] Father's paternal rights to the children were also terminated during the proceedings. However, he is not a party to this appeal. Therefore, "respondent" refers only to respondent-mother in this opinion.

The DHHS provided respondent with numerous services to help her rectify the barriers to reunification with the children, including parenting classes, psychological assessments, therapy sessions, housing programs, psychiatric services, and parenting time visits. While respondent attended a majority of the services that were offered to her and had made some progress, she did not benefit from those services as a result of her lack of consistency. Specifically, it was reported that respondent did not consistently participate in mental health treatment, including taking all of her prescribed medications, because she did not believe that she had received a proper mental health diagnosis. Respondent failed to timely recognize the interplay of domestic violence, her mental health and her trauma with her ability to parent the children. Ultimately, the trial court terminated respondent's parental rights to the children. This appeal followed.

## II. STATUTORY GROUNDS

Respondent first argues that the trial court erred by finding statutory grounds for termination. We disagree.

## A. STANDARD OF REVIEW

"To terminate parental rights, a trial court must find by clear and convincing evidence that at least one statutory ground under MCL 712A.19b(3) has been established." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013). "This Court reviews for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination." *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014). "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011). When applying the clearly-erroneous standard in parental termination cases, "regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *Id*.

## B. ANALYSIS

The trial court terminated respondent-mother's parental rights to the children under MCL 712A.19b(3)(c)(*i*) and (j). Those statutes provide, in relevant part, as follows:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

> * * *

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

> * * *

-2-

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

If we conclude that at least one ground for termination existed, "we need not consider the additional grounds upon which the trial court based its decision." *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009).[2]

Termination of parental rights under MCL 712A.19b(3)(c)(*i*) is appropriate "when the conditions that brought the children into foster care continue to exist despite time to make changes and the opportunity to take advantage of a variety of services[.]" *In re White*, 303 Mich App at 710 (quotation marks and citation omitted). MCL 712A.19b(3)(j) allows a trial court to terminate parental rights if "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." Under MCL 712A.19b(3)(j), harm can include either physical or emotional harm. See *In re Hudson*, 294 Mich App 261, 268; 817 NW2d 115 (2011). "[A] parent's failure to comply with the terms and conditions of his or her service plan is evidence that the child will be harmed if returned to the parent's home." *In re White*, 303 Mich App at 711. A parent's mental illness can affect a parent's ability to parent a child. See *In re Utrera*, 281 Mich App 1, 24-25; 761 NW2d 253 (2008). The trial court may consider a parent's mental health and history of domestic violence when determining whether it is reasonably likely that the child will be harmed if returned to the parent. See *In re AH*, 245 Mich App 77, 87; 627 NW2d 33 (2001).

The evidence in this case established that respondent had failed to adequately address the mental health concerns, emotional stability, and the related domestic violence issues that led to the adjudication.

The conditions listed in the petition regarding respondent's barriers to reunification with the children included her mental health concerns, emotional instability, and her suicidal ideations. Respondent's psychological evaluation indicated that she needed to continue to take all of her prescribed medications, regularly attend long-term therapy and counseling sessions, and develop a crisis plan to deal with the frequency and severity of her suicidal thoughts. Additionally, respondent had been diagnosed with borderline personality disorder, schizoaffective disorder, anxiety, and post-traumatic stress disorder.

The trial court emphasized that respondent had failed to address her mental health issues that led to the adjudication. Although the court recognized that respondent had very recently made some progress after she acknowledged that she was a victim of domestic violence, it found that respondent lacked insight regarding her need for mental health treatment and that the condition would not be rectified within a reasonable amount of time considering the age of the children based on the circumstances. The caseworkers consistently reported that respondent was not benefiting

---

[2] Respondent does not dispute that the time between the dispositional review and the beginning of the termination hearing was more than 182 days, satisfying the statutory period under MCL 712A.19b(3)(c).

from her services because she refused to accept her diagnoses, and she periodically stopped taking her medications. Respondent even testified that she stopped taking the medications that she was prescribed because they would make her "cyclically vomit" and she would feel "much clearer" when she stopped taking the medication. Respondent also continued to believe that she had been misdiagnosed. Further, despite respondent's testimony to the contrary, caseworkers testified that it was respondent's decision to change mental health providers because she did not believe the treatments were benefiting her. Nonetheless, we recognize that respondent's most recent therapist through Community Mental Health (CMH), with whom respondent first acknowledged she was a victim of domestic violence, left CMH sometime in July 2021, and there were apparently issues with respondent obtaining a new therapist thereafter. However, respondent acknowledged that at least part of this difficulty was the result of father's treatment of her former therapists, and that she did not complete Dialectical Behavioral Therapy because of father's interruptions during sessions. "[T]he totality of the evidence amply" supports that respondent "had not accomplished any meaningful change" in the conditions that led to adjudication. Respondent had not addressed the conditions that led to her suicidal ideations and mental instability. She likewise lacked insight to her need for treatment, and she continued to disagree with her diagnoses. *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009).

There was also no reasonable likelihood that respondent's struggle with mental health, emotional instability, and the related issues with domestic violence, would be rectified within a reasonable time considering the ages of the children. *Id*. At the time of the termination hearing, the children had been placed in a foster home for approximately 16 months, and the children were approximately three years old and 18 months old. Both children had spent a significant portion of their life outside of respondent's care. Although respondent had made progress with housing, communicating with her caseworkers, and finally acknowledged domestic violence at the time of the termination hearing, the record reveals that respondent had much more to accomplish before reunification with her children could even be considered. While respondent asserted that she benefited from therapy and domestic violence counseling after she acknowledged the existence of domestic violence, respondent's caseworkers consistently discussed domestic violence with respondent, and respondent had received domestic violence counseling in August 2020. However, respondent continued to deny that she was a victim of domestic violence for approximately one year, until only months before the termination hearing, during which respondent could have been benefiting from the services that were offered. Further, despite acknowledging that she had significant mental health issues at the beginning of the case, respondent failed to comply with her case service plan, show consistent progress with stabilizing her mental health, or appear to recognize the importance of ongoing treatment.

The caseworkers consistently testified that respondent did not comply with her parent agency treatment plan with regard to her mental and emotional stability, along with her defiance of the trial court's no-contact order specified in her treatment plan for her issues with domestic violence. Although respondent had the opportunity to address her issues with domestic violence and the accompanying trauma of that abuse, respondent had only recently recognized the existence of domestic violence in April 2021. The caseworkers consistently testified that respondent failed to make any significant progress in this area, and that respondent failed to appreciate its effect on the minor children. Additionally, respondent testified that she did not have any insight as to how exposure to domestic violence could affect her children. Respondent's most recent therapist

reported to a caseworker in July 2021, that respondent "showed little insight into her need for mental health treatment" and that respondent felt that most of her issues were "cleared up" after she left her abuser. Furthermore, respondent appeared to largely attribute her lack of progress and compliance with the service plan with issues caused by the father. In other words, respondent failed to accept little personal responsibility for the plight of the children.

There was no indication that respondent would be able to address the children's special mental and emotional needs when respondent could not address her own in a reasonable amount of time. There was an ongoing concern regarding respondent's ability to independently parent both children. The caseworkers consistently testified that respondent needed assistance from others while parenting. One caseworker testified that respondent had stated that she did not feel ready for unsupervised parenting time in November 2020, that she needed more support during her parenting-time visits, and that she was not able to handle both children or their mental health and medical needs.

The record supports that the trial court did not clearly err when it found by clear and convincing evidence that the conditions that led to the adjudication continued to exist under MCL 712A.19(3)(c)(*i*). Similarly, given respondent's lack of progress in addressing her mental health issues and issues with domestic violence, we are not definitely and firmly convinced that the trial court made a mistake when it found that the evidence supported terminating her parental rights under MCL 712A.19(3)(j). For all the reasons already discussed, it is clearly apparent that respondent did not comply with her service plan as it related to rectifying her mental health, emotional concerns, and related domestic abuse. Therefore, the trial court did not clearly err by finding that MCL 712A.19b(3)(j) was established by clear and convincing evidence.[3]

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Next, respondent argues that her trial counsel was ineffective by not calling her current therapists or counselors to testify at the termination hearing. We disagree.

## A. STANDARD OF REVIEW

"The principles applicable to claims of ineffective assistance of counsel in the arena of criminal law also apply by analogy in child protective proceedings; therefore, it must be shown that (1) counsel's performance was deficient, falling below an objective standard of reasonableness, and that (2) the deficient performance prejudiced the respondent." *In re Martin*, 316 Mich App 73, 85; 896 NW2d 452 (2016); see also *Strickland v Washington*, 466 US 668, 690; 104 S Ct 2052; 80 L Ed 2d 674 (1984). A defendant must move for a new trial or an evidentiary hearing to preserve their claim that his or her counsel was ineffective. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012); see also *People v Abcumby-Blair*, 335 Mich App 210, 217; 966 NW2d 437 (2020). Respondent failed to do so. Therefore, this issue is unpreserved.

---

[3] On appeal, respondent does not argue that the trial court erred by finding that termination of her parental rights was in the best interests of the children.

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). "This Court reviews for clear error a trial court's factual findings, while we review de novo constitutional determinations." *People v Johnson*, 293 Mich App 79, 90; 808 NW2d 815 (2011). However, unpreserved claims of ineffective assistance of counsel are reviewed for "errors apparent on the record." *Id*. "Clear error exists if the reviewing court is left with a definite and firm conviction that a mistake has been made." *People v Harris*, 261 Mich App 44, 51; 680 NW2d 17 (2004).

"In examining whether defense counsel's performance fell below an objective standard of reasonableness, a defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). "[A] court must determine whether the strategic choices were made after less than complete investigation, and any choice is reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id*. (quotation marks, citation, and alteration omitted). A party establishes the prejudice prong by showing that, but for counsel's error, a different result would have been reasonably probable. *Strickland*, 466 US at 694. "We will not substitute our judgment for that of counsel on matters of trial strategy, nor will we use the benefit of hindsight when assessing counsel's competence." *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009) (quotation marks and citation omitted).

## B. ANALYSIS

Respondent argues that her trial counsel was ineffective for failing to call her therapists and counselors to testify about her progress relating to her mental health stability. There are valid reasons, based in sound trial strategy, for respondent's trial counsel to have not called her therapists and counselors. Respondent's therapists and counselors would have been subject to cross-examination, and the evidence submitted to the trial court indicated that respondent's counselors and therapists found that respondent was not making progress in her treatment. Further, in order to receive a new trial on the basis of ineffective assistance of counsel, a respondent must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 US at 690. A claim of ineffective assistance of counsel based on the failure to investigate or call witnesses will fail when the party does not produce affidavits describing testimony that would have been elicited from those witnesses or show how the proposed testimony would have benefited the case. See *People v Davis*, 250 Mich App 357, 369; 649 NW2d 94 (2002). Respondent asserts only that the additional witnesses could have testified generally about her progress in mental health, but she has failed to provide any additional information as to what specifically that testimony would entail or how it would have benefited her.

Additionally, respondent has not demonstrated that she was prejudiced by her trial counsel's alleged error. Respondent has failed to provide any support for a finding that had her attorney called additional witnesses, there was a reasonable probability that the result of the proceedings would have been different. *Strickland*, 466 US at 694. There is no indication that the termination proceedings would have had a different outcome had respondent's therapists and counselors testified. The trial court was presented with reports and statements from those therapists and counselors, and the trial court also heard testimony from respondent's caseworkers indicating that respondent had intermittently taken her medication, had not made significant

-6-

progress regarding her mental health, and had defied court orders during the pendency of the case. As noted, respondent's most recent therapist reported that respondent showed "little insight into her need for mental health treatment" and that respondent "reflect[ed] poor insight" and questioned the need to participate in services. On appeal, respondent only asserts that the outcome would have been different because respondent's therapists and counselors could have rebutted their previous reports. While we have reviewed the record in this case, we cannot discern any obvious errors in respondent's attorney's conduct at the termination hearing. Therefore, respondent's claim of ineffective assistance of counsel fails.

Affirmed.

/s/ Anica Letica
/s/ James Robert Redford
/s/ Michelle M. Rick